RADER, Circuit Judge,
dissenting.
This court today affirms the unenforce-ability of a patent due to inequitable conduct. To my eyes, this record does not show clear and convincing evidence of intent to deceive the United States Patent and Trademark Office (USPTO). Moreover, my reading of our case law restricts a finding of inequitable conduct to only the most extreme cases of fraud and deception.
Without doubt, candor and truthful cooperation are essential to an ex parte examination system. With burgeoning application rates, the USPTO must rely on applicant submissions to narrow the prior art search. And, of course, those submissions must be reliable. The threat of inequitable conduct, with its “atomic bomb” remedy of unenforceability, ensures that candor and truthfulness.
Although designed to facilitate USPTO examination, inequitable conduct has taken on a new life as a litigation tactic. The allegation of inequitable conduct opens new avenues of discovery; impugns the integrity of patentee, its counsel, and the *1350 patent itself; excludes the prosecuting attorney from trial participation (other than as a witness); and even offers the trial court a way to dispose of a case without the rigors of claim construction and other complex patent doctrines. This court has even observed a number of cases, such as this one, that arrive on appeal solely on the basis of inequitable conduct where the trial court has apparently elected to try this issue in advance of the issues of infringement and validity. See, e.g., Frazier v. Roessel Cine Photo Tech, Inc., 417 F.3d 1230 (Fed.Cir.2005); Semiconductor Energy Lab. Co. v. Samsung Elecs. Co., 204 F.3d 1368 (Fed.Cir.2000).
This phenomenon is not new or unprecedented. At an earlier time, the Federal Circuit also observed that inequitable conduct as a litigation strategy had become a “plague.” Burlington Indus, v. Dayco Corp., 849 F.2d 1418, 1422 (Fed.Cir.1988). In response, this court took a case to reduce abuse of inequitable conduct. Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed.Cir.1988) (en banc).
In light of the rejuvenation of the inequitable conduct tactic, this court ought to revisit occasionally its Kingsdown opinion. Kingsdown claimed a two-piece ostomy device. Id. at 869. The examiner rejected claim 50 as indefinite. Id. at 870. In response, Kingsdown amended claim 50. Id. Then, later in the prosecution, Kings-down copied the rejected claim 50, not the amended version, into a continuation application as new claim 43. Id. at 870-71. The once rejected, now recopied claim 43 matured into claim 9 of U.S. Patent No. 4,460,363. Id. at 871. On the basis of this error that certainly called into question the integrity of the examination system, the district court found inequitable conduct. Id. at 871-72. This court, en banc, reversed. Id. at 877.
In Kingsdown, this court clearly conveyed that the inequitable conduct was not a remedy for every mistake, blunder, or fault in the patent procurement process. Even mistakes that struck at the heart and integrity of the process — like repeatedly recopying and acquiring rights to a rejected claim — did not amount to inequitable conduct. Instead this court required “culpable” conduct supported by clear and convincing evidence of intent to deceive the USPTO. Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1443 (Fed.Cir.1991) (citing Consol. Aluminum Corp. v. Foseco Int’l Ltd., 910 F.2d 804, 809 (Fed. Cir.1990)). At the same time, it is hard to imagine a more material mistake than reasserting claims to rejected subject matter. Materiality of any undisclosed or misleading information, of course, is the other prong of an inequitable conduct analysis. Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed.Cir.2007). In sum, Kingsdown properly made inequitable conduct a rare occurrence.
More recently, however, the judicial process has too often emphasized materiality almost to the exclusion of any analysis of the lofty intent requirement for inequitable conduct. Merging intent and materiality at levels far below the Kingsdown rule has revived the inequitable conduct tactic. For example, in Nilssen v. Osram Sylva-nia, Inc., 504 F.3d 1223 (Fed.Cir.2007), one of the reasons this court upheld a judgment of unenforceability for an exaggerated claim of small entity status. Nilssen entered into agreements with Philips Electronics North America Corp. (“Philips”) to license the patents in suit. Id. at 1227-28. Because Phillips had more than 500 employees, the district court found that Nilssen had made several improper small entity maintenance fee payments to the USPTO. Id. at 1228. This court affirmed, stating: “[w]e therefore affirm the district court’s decision finding that all of *1351 the patents in suit are unenforceable due to inequitable conduct in improperly claiming small entity status.” Id. at 1233. In General Electro Music Corp. v. Samick Music Corp., 19 F.3d 1405 (Fed.Cir.1994), this court upheld unenforceability under circumstances that are even harder to reconcile with the en banc Kingsdown rule. The mistake in that case involved a petition to make special. Id. at 1407.
The applicant sought expedited examination of its application on the ground that the claimed invention was being infringed. Id. At that time, such a request required an oath or declaration that the applicant made a careful and thorough search of the prior art. Id. The applicant submitted that declaration, but later conceded that it actually had only conducted an informal search as opposed to a formal search. Id. This process did not result in the issuance of rejected claims, but involved nothing more than an expedited examination. Still this miscarriage rendered the entire patent unenforceable. Id. at 1412.
While the case at bar does not feature small entity status or expedited examination, the record still does not, in the context of Kingsdown, show a clear and convincing intent to deceive. We are cognizant of the high standard of review. To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment. Kingsdown, 863 F.2d at 876. While the standard of review is high, it is not insurmountable. Where the district court made clear error of fact, this court must overturn such a determination.
In this case, Dr. Uzan, Associate Director of Biological Research at Aventis, assisted in the prosecution of the application that led to U.S. Patent No. 5,389,618 ('618) covering a low molecular weight heparin mixture invented by Roger Debrie (Debrie LMWH). Specifically, Dr. Uzan assembled data from various clinical studies comparing the half-lives of the Debrie LMWH to a prior art LMWH invented by Mardiguian (Mardiguian LMWH). Dr. Uzan submitted this data, from the Duchier study and the Foquet study respectively, as example 6 of the patent. In submitting the data, Dr. Uzan did not draw attention to the different doses in those studies.
Without question, Dr. Uzan should have disclosed the dosage of the Mardiguian LMWH in example 6 subsection 3. Unfortunately, the Foquet study chart that Dr. Uzan used did not show the dosage information. Dr. Uzan neglected to add the information. To make it clear, Dr. Uzan did not attempt to conceal data that were otherwise present. Rather he just submitted the study without adding to the disclosure. This omission, even if negligent, is hardly Kingsdown’s culpable intent to deceive. Moreover this omission strikes less at the integrity of the system than issuance of a rejected claim, which Kingsdown sanctioned.
Likewise, Dr. Uzan ought to have disclosed to the USPTO that he compared the 60 mg dose of the prior art Mardiguian LMWH to the 40 mg dose of the Debrie LMWH in the declaration he submitted on March 29, 1993. Dr. Uzan testified that the different dose “did not come to his mind.” In context, this explanation has merit. Dr. Uzan was asked to compare the superior pharmacokinetic properties of the Debrie LMWH over the Mardiguian LMWH prior art compound. Comparison of drug properties at their clinically relevant (and different) dosages is, of course, completely appropriate. Again, this oversight may have been careless, but hardly culpable. To my eyes, Dr. Uzan’s negli *1352 gence does not rise to the level of intent to deceive, particularly in comparison with Kingsdown.
Even a cursory review of example 6 shows no dosage indications. The Debrie LMWH in subsection 1 indicates two dosages. Dosage is an element in subsections 2 and 4 as well. Thus, the absence of a dosage in subsection 3 is blatantly obvious. Surely if Dr. Uzan had intended to deceive the USPTO, he would not have made this omission so conspicuous. Moreover, I find it difficult to fathom that a scientist of Dr. Uzan’s caliber and reputation would engage in such deception. As the district court points out, Dr. Uzan has had a magnificent fifty year career with Aventis, has published over 350 scientific articles and has received numerous prestigious awards including the Galien Research Prize, France’s highest award for drug discovery. This world-class scientist would hardly risk his reputation and tarnish his brilliant career for a single example in the prosecution of a patent for an invention in which he was not even involved.
The inadvertence in this case presents another difficulty for a finding of intent to deceive. The omissions and prosecution errors were committed by two individuals, Dr. Uzan and Mr. Schulman, Aventis’ prosecuting attorney. Collective actions call into question any showing of intent for inequitable conduct. 37 C.F.R. § 1.56 refers to the duty of candor and good faith possessed by “[e]ach individual associated with the filing and prosecution of a patent application.” (emphasis added). Mr. Schulman did not know that the doses of the Debrie LMWH and the Mardiguian LMWH were different. Dr. Uzan admitted that he inadvertently neglected to add that information to the graphs. The dosage information was not on the original Foquet chart submitted to the Aventis patent department and Dr. Uzan neglected to add it. Mr. Schulman had no way of knowing that the comparison was at two different doses and therefore the impropriety of using that data to demonstrate compositional difference. Mr. Schulman’s arguments also carry the markings of a good faith mistake.
Most important, Dr. Uzan himself revealed the error. This candor is inconsistent with deceptive intent. He submitted all of the underlying data to the patent office with his second declaration on June 9, 1994. Thus, unlike the situation in Kingsdown, Dr. Uzan corrected the mistake before it resulted in an issued patent. In Dr. Uzan’s second declaration, he clearly articulated that the half-life data showed superior properties of the Debrie LMWH over the prior art Mardiguian LMWH. Still, with all information before the USP-TO, the examiner allowed the patent. Lastly, in early 2003, before filing its infringement suit, Aventis filed a reissue application for the '618 patent. The patent reissued on June 14, 2005 with all of the original independent claims, but without example 6. The half-life data were apparently not even necessary for patenta-bility. The USPTO determined that the Debrie LMWH was inventive over the pri- or art Mardiguian LMWH without relying on the controversial half-life data from example 6.
The USPTO granted the reissue a day before the district court judge granted Teva and Amphastar’s summary judgment motion that the '618 patent was unenforceable. Aventis did not have the opportunity to make this argument to the trial judge. This record does not prevent this court, however, from considering all this information in evaluating the inequitable conduct finding. Thus, both materiality and intent seem suspect on this record. In sum, read in the context of Kingsdown, I would re *1353 verse the district court’s determination of inequitable conduct.