**ERGO LICENSING, LLC, Plaintiff**

v.

**CAREFUSION 303, INC., Defendant.**

**Civil No. 08–259–P–S.**

United States District Court,
D. Maine.

Dec. 14, 2009.

---

Peter S. Black, Elizabeth M. Frankel, James G. Goggin, Verrill Dana LLP, Portland, ME, for Plaintiff.

Erica Pascal, Kathryn Riley, DLA Piper LLP, Randall Kay, Jones Day, San Diego, CA, Marc Belloli, William Goldman, DLA Piper LLP, East Palo Alto, CA, William D. Hagedorn, Gregory Paul Hansel, Preti, Flaherty LLP, Portland, ME, for Defendant.

*MEMORANDUM DECISION ON
DISCOVERY DISPUTE*

JOHN H. RICH III, United States
Magistrate Judge.

This discovery dispute involves 31 pages included in a production of 540 pages of documents by the plaintiff in response to the defendant's request for production. The plaintiff claims that these pages were provided inadvertently, are privileged, and thus must be returned, and that the defendant may not use any information it may have gleaned from them. The defendant asserts that the pages are not privileged, and, in the alternative, that any privilege has been waived. I conclude that the documents are privileged and must be returned to the plaintiff, and that the defendant may not use any information derived from those documents.

On September 15, 2009, the defendant served a subpoena for documents on Dr. Uvo Hoelscher, the owner of the corporate plaintiff,[1] asking, *inter alia,* for documents concerning communications with lawyers from the law firms of Bohan Mathers, Verrill Dana, and McGlew & Tuttle. Declaration of Peter Black ("Black Dec.") ¶ 2. On September 16, 2009, Peter Black, attorney for both Hoelscher and the plaintiff, sent an e-mail to opposing counsel notifying him that Hoelscher would not produce certain documents in response to those requests because they were privileged. *Id.* On October 27, 2009, responses and objections to the requests included in the subpoena were served, including objections based on the attorney-client privilege and the work product doctrine. *Id.* ¶ 3.

On October 29, 2009, approximately 500 pages of documents were produced in response to the subpoena. *Id.* ¶ 5. The 500 pages were reviewed at least three times for privileged documents, first by an associate attorney, next by Black, and finally again by the associate. *Id.* After Black's review, all documents for which a privilege would be claimed were marked and placed separately in a pile to be logged. *Id.* When the production was made, Black's firm believed that no privileged documents were produced. *Id.*

On November 16, 2009, counsel for the defendant asked Black to consent to the filing of an amended answer. *Id.* ¶ 6. At Black's request, a copy of the proposed amended answer was e-mailed to him on November 19, 2009. *Id.* Upon reading the amended answer, Black noticed that the defendant had quoted from e-mails and letters between Hoelscher and McGlew & Tuttle, which he believed to be privileged. *Id.* He then reviewed the document production and found that two piles of privileged documents had been inadvertently produced. *Id.*

On November 20, 2009, Black sent an e-mail to the defendant's counsel notifying them of the inadvertent disclosure and the use of privileged material in the amended answer. *Id.* ¶ 9.[2] Counsel for the defendant refused to return the documents, *id.* ¶ 10, but sequestered all copies, both hard copy and electronic, and directed all attorneys and staff working on the matter to sequester and/or destroy any copies of the documents. Pascal Dec. ¶ 10. Counsel for the defendant then requested a telephonic discovery conference on this issue, which was held on December 7, 2009, and resulted in my order that the parties submit simultaneous briefs and replies setting forth their positions. Those documents have now been submitted to me.

## I. Attorney–Client Privilege

█ The defendant first asserts that none of the documents at issue is privileged. Ca-

---

1. The defendant and its counsel assert that the documents at issue were "produced by Plaintiff Ergo Licensing," Declaration of Erica J. Pascal in Support of Defendant CareFusion 303, Inc.'s Motion to Compel ("Pascal Dec.") ¶ 3; Defendant CareFusion 303, Inc.'s Motion to Compel 31 Pages Produced by Ergo Licensing LLC in October 2009 ("CareFusion Motion") at 1, but the subpoena was directed to Hoelscher, Exh. 1 to Black Dec., and it was therefore Hoelscher who produced the documents.

2. The plaintiff asserts that the defendant has removed the actual quotations from its proposed amended answer "but nevertheless continues to use information" from the documents at issue "in the motion to amend." Plaintiff's Brief Regarding Inadvertent Disclosure ("Ergo Brief") at 2.

reFusion Motion at 3–4. The attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

*United States v. Schussel,* 291 Fed.Appx. 336, 343, 2008 WL 3983887, \*2, \*6 (1st Cir. Aug.29, 2008) (quoting *United States v. Massachusetts Inst. of Tech.,* 129 F.3d 681, 684 (1st Cir.1997)).

■ The defendant contends that the second set of documents at issue, Bates numbered ERGO 87–94, is not privileged because Hoelscher "was not seeking legal advice from Verrill Dana and Verrill Dana was not providing any legal advice" in the e-mail string that makes up this set of documents. CareFusion Motion at 4. This set of documents consists of e-mails between Hoelscher and lawyers at Bohan Mathers and between lawyers with respect to the e-mails from Hoelscher.

The string of e-mails clearly relates to Hoelscher's seeking of legal advice from these lawyers. The defendant asserts that Patricia Mathers, a lawyer at Bohan Mathers, "was a third party[,]" and apparently concludes that her name on some of the e-mails renders all of them unprivileged. But, Hoelscher specifically refers to consulting "Patricia" for "some selected difficult cases" and Black refers to advancing fees to Patricia "for consulting with us in the course of the case. We may ask her to work with you to process certain legal documents." *See also* Declaration of Uvo Hoelscher, PhD, ("Hoelscher Dec.") ¶ 3. These statements make it clear that Patricia Mathers was not merely a third party, but rather a retained attorney assisting the Verrill Dana lawyers directly retained by Hoelscher. I reject the defendant's argument with respect to this set of documents.[3]

■ The defendant next contends that the remaining documents, Bates numbered ERGO 29–51, are not privileged "because McGlew did not represent Ho[e]lscher."[4] This is so because the "cover letter" for this set of documents, ERGO 29, states "we did not represent Mr. Hoelscher with regard to prosecution of the Patent and at the time we filed an Assignment for our then client." However, Hoelscher retained James McGlew "with respect to the payment of maintenance fees," the very issue for which the defendant seeks to use the documents, and for "legal advice about asserting the patent." Hoelscher Dec. ¶ 2. Clearly, pages ERGO 30, 36–42, and 47–51 are correspondence between Hoelscher and McGlew which fit within the definition of the attorney-client privilege. ERGO 29 is a letter between two lawyers who represented Hoelscher at different times with respect to the patent and payment of the maintenance fees, and is also protected by the privilege.

■ With respect to the remaining documents in this set, which the defendant characterizes as "simply ministerial matters, such as forms and fee payments to the United States Patent and Trademark Office," CareFusion Motion at 4, and thus not subject to the attorney-client privilege, these documents are more appropriately described as drafts of Patent Office forms, ERGO 31–33, 43–46, and an assignment of an issued patent, ERGO 34–35.

Case law differs on the question of whether drafts of documents intended to be filed with a government agency, and thus intended to be public, are covered by the attorney-client privilege. *See, e.g., Schenet v. Anderson,* 678 F.Supp. 1280, 1282–84 (E.D.Mich.1988) (discussing split in authority and holding that privilege applies to all infor-

---

**3.** In its reply brief, the defendant asserts that "many" of the pages of the documents at issue "were disclosed to the third party Drägerwerk," Defendant CareFusion 303, Inc.'s Reply Brief in Support of Its Motion to Compel at 2, but does not identify any such pages. This is a new argument not raised in the defendant's initial brief and therefore will not be considered further. *In*

*re One Bancorp Sec. Litig.,* 134 F.R.D. 4, 10 n. 5 (D.Me.1991).

**4.** I have spelled Dr. Hoelscher's name as his lawyers spell it. The defendant uses the German spelling, Hölscher.

mation conveyed by clients for purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent such information not contained in document published); *compare In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07–md–01871, 2009 WL 4641707, *8 (E.D.Pa. Dec.7, 2009) (draft document which contained no confidential information or legal advice not found in final version not covered by privilege) *with Re Pappas*, No. 08–10949, 2009 WL 1574923 (Bkrtcy.D.Del. June 3, 2009), at *1 (holding drafts of documents prepared for eventual release not protected by privilege) *and with Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D.Ill.2009) (all drafts of documents privileged even when final product becomes public). I find persuasive the discussion and conclusion of the court in *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 85–86 (S.D.N.Y. 2006), which, after reviewing the emerging trends in application of the attorney-client privilege to draft patent applications, held that the privilege "generally applies to draft patent applications."

I conclude that the documents numbered ERGO 31–35 and 43–46 are draft documents that are also covered by the attorney-client privilege.

## II. Crime–Fraud Exception

 In the alternative, the defendant argues that none of the documents at issue is protected by the attorney-client privilege because all of them are subject to the crime-fraud exception to the privilege. "Under the 'crime-fraud exception,' the attorney-client privilege does not apply when a client seeks advice from a lawyer that will serve him in the commission of a crime or fraud." *Schussel*, 291 Fed.Appx. at 345. The party relying on the exception must show

(1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.

*Id.* (emphasis in original).

 The defendant correctly notes, Care-Fusion Motion at 5, that a finding of fraud

requires the following elements: a false representation of a material fact made with the intent to deceive or a state of mind so reckless that it may be held to be the equivalent of intent, with a justifiable reliance upon the misrepresentation by the party deceived, and injury to that party as a result of its reliance. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed.Cir.2000). It contends that "[i]t is a material misrepresentation for a patentee to claim small entity status to the [Patent Office], when it is, in fact, a large entity[,]" citing *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1232 (Fed.Cir.2007). However, the issue in that case was not fraud, but rather "inequitable conduct in the prosecution of a patent," *id.* at 1231.

More important is the fact that the communications represented in the disputed documents all took place after any possible misrepresentation of the patent holder's status as a large or small entity had been made. The crime-fraud exception applies only when the communications take place while the client is engaged in or planning criminal or fraudulent activity. With the exception of ERGO 29–30 and 36–38, all of the disputed documents that refer in any way to payment of a maintenance fee to the Patent Office post-date any underpayment. The defendant asserts, in conclusory fashion, that all of the documents "evidence the fraud and moreover, were themselves involved in the perpetration and continuation of the fraud against the" Patent Office. CareFusion Motion at 7. If any document that "evidenced" a past fraud could thereby be deprived of the attorney-client privilege, the crime-fraud exception would swallow up much of the privilege. The documents do not show any evidence that they were "involved" in the "continuation" of the alleged fraud; rather, the issue in the documents is how to correct the mistaken past payments.

 I note also that the defendant's contentions that Hoelscher paid the small entity fee to the Patent Office while knowing "of the license rights he granted back to Drägerwerk," and that he "intentionally withheld from the [Patent Office] that he granted a flat fee license to ... Baxter International, a large entity, in 2003[,]" *id.* at 6, as evidence

of Hoelscher's fraudulent intent, are not supported by the citations given to exhibits to the Pascal declaration. The fraud element of the crime-fraud exception must be demonstrated by evidence such that "the proposed factual basis must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a ... fraud, and that the communications were in furtherance thereof." *Fuller v. Interview, Inc.,* No. 07 CIV 5728(RJC)(DF), 2009 WL 3241542, *5 (S.D.N.Y. Sept. 30, 2009). The evidence proffered by the defendant falls short of this standard.

## III. Waiver

 The defendant next argues that the plaintiff has waived any privilege that might otherwise attach to the documents at issue under the circumstances of their production. It begins by quoting language from the First Circuit opinion in *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 883 (1st Cir.1995), which it characterizes as "a strict approach to the waiver of privilege," one that is "strict," apparently, in favor of waiver. CareFusion Motion at 7. The quoted language does not establish anything beyond the unremarkable proposition that inadvertent disclosures *may* waive the privilege and *may* have "a significance that transcends the documents actually disclosed." 60 F.3d at 883. Those observations were made with respect to documents that had previously been disclosed to opposing counsel "during their initial review of the administrative file," *id.,* making the trial court's later turnover order unassailable and a "fairly obvious conclusion." This language does not establish a "stringent standard," as the defendant would have it. CareFusion Motion at 7.

 Whether a waiver of the attorney-client privilege is accomplished by the inadvertent disclosure of documents is evaluated by a three-element test:

1) the disclosure must be inadvertent; 2) the holder of the privilege or protection took reasonable steps to present the disclosure; and 3) the holder promptly took steps to rectify the error.

*Rhoades v. Young Women's Christian Ass'n,* Civil Action No. 09–261, 2009 WL 3319820 (W.D.Pa. Oct.14, 2009), at *2. CareFusion ignores the first element of the test. I conclude, based on the showing made by the plaintiff, which bears the burden of proof on this test, *id.,* that the disclosure of the disputed documents in this case was inadvertent. Both parties move immediately to the expansion of the final two elements set forth in *Rhoades:*

(1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.

(2) The number of inadvertent disclosures.

(3) The extent of the disclosure.

(4) Any delay and measures taken to rectify the disclosure.

(5) Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

*Id.*

The defendant asserts that the plaintiff "did not taken any 'reasonably' [sic] precautions in its document production" because the documents at issue were "part of the first 100 pages of the 540 page production," and the first page of each set of documents bore the name of a lawyer or of a law firm. CareFusion Motion at 8. However, the precautions described by the plaintiff, Black Dec. ¶ 5, appear to be quite reasonable.

The defendant next contends that the plaintiff "did not independently recognize any error in producing these documents." CareFusion Motion at 8. So far as I can tell, this fact does not address any of the elements listed in *Rhoades.* The defendant does not attempt to tie the fact to any of the listed elements. The plaintiff promptly took steps to rectify the inadvertent production as soon as it became aware of it. *See Fuller,* 2009 WL 3241542, at *3 (waiver generally not found when producing party acts promptly to rectify error upon its discovery). There is no evidence that it sat on its hands, and no requirement that it check its production once again immediately after it has been served.

Next, the defendant asserts that "[t]he scope of the production indicates that the

production was not inadvertent[,]" because the disputed documents were "not buried in a large production[,]" but rather constituted "nearly 6% of the total production." *Id.* I note that the 540 pages produced were culled from a much larger group, Black Dec. ¶ 5, but the 6% ratio may be some evidence of waiver under *Rhoades*, where only four pages out of over 1600 were claimed to have been inadvertently produced. 2009 WL 3319820 at *3.

 Finally, the defendant asserts that the plaintiff's "attempt to reclaim these documents is not in the interests of fairness and justice" because they "directly support" its unenforceability defense. CareFusion Motion at 8. However, there is no legal requirement that inadvertent disclosure results in a waiver of the privilege whenever the documents at issue support the opposing party's position. If that were the case, almost every inadvertent disclosure would automatically waive any otherwise-applicable privilege. The defendant does not attempt to demonstrate that it cannot obtain evidence of the plaintiff's alleged fraud against the Patent Office from any other source or in any other way. Its assertion that allowing the plaintiff to retrieve the disputed documents "simply condones and continues the fraud originally perpetrated against" the Patent Office is unsupported hyperbole.

On balance, the only reasonable conclusion is that the privilege has not been waived in this case.

### IV. Other Contentions

My conclusions that the documents at issue are covered by the attorney-client privilege and that the privilege has not been waived make it unnecessary to reach the plaintiff's contentions that the documents are protected by the work-product doctrine and that the defendant has violated Maine Bar Rule 4.4 and this court's Local Rule 83.3(d). Plaintiff's Brief at 4–5.

### V. Conclusion

For the foregoing reasons, the defendant's motion is **DENIED** and it is **ORDERED** to return to the plaintiff any and all originals and copies, both hard copies and electronic copies, of the 31 pages of documents at issue and to submit promptly to this court a certification of counsel that this order has been complied with.

### VI. Sealing of This Decision

I **DIRECT** the Clerk of the Court to seal this Memorandum Decision when docketed. The parties shall notify me by noon on Wednesday, December 16, 2009, whether this decision contains any confidential information that should remain sealed and, if so, indicate explicitly what language should be redacted, with due regard to the public's interest in access to court proceedings. If I do not hear from the parties by noon on December 16, this decision will be unsealed.