# United States Court of Appeals for the Federal Circuit

2008-1597

LABORATORY CORPORATION OF AMERICA HOLDINGS
(doing business as LabCorp),

Plaintiff-Appellee,

v.

METABOLITE LABORATORIES, INC.,

Defendant-Appellant.


Gregory A. Castanias, Jones Day, of Washington, DC, argued for plaintiff-appellee. With him on the brief was Leon F. DeJulius, Jr., of Pittsburgh, Pennsylvania. Of counsel on the brief were Natalie Hanlon-Leh and Nina Y. Wang, Faegre & Benson LLP, of Denver, Colorado.

Mark A. Perry, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were Glenn K. Beaton and Kourtney M. Mueller, of Denver, Colorado.

Appealed from: United States District Court for the District of Colorado

Senior Judge Zita L. Weinshienk

# United States Court of Appeals for the Federal Circuit

2008-1597

LABORATORY CORPORATION OF AMERICA HOLDINGS
(doing business as LabCorp),

Plaintiff-Appellee,

v.

METABOLITE LABORATORIES, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the District of Colorado in case no. 04-CV-1662, Senior Judge Zita L. Weinshienk.

_____

DECIDED: March 11, 2010

_____

Before GAJARSA, DYK, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Circuit Judge DYK.

GAJARSA, Circuit Judge.

Metabolite appeals from the United States District Court for the District of Colorado's grant of summary judgment. See Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 571 F. Supp. 2d 1199 (D. Colo. 2008). The district court granted LabCorp's motion for summary judgment on its complaint for declaratory judgment that it did not

breach a license agreement for failure to pay know-how royalties on homocysteine assays performed after judgment had been entered in a prior patent infringement and breach of contract action brought, in part, by Metabolite. Because the present cause of action does not arise under federal patent law nor does Metabolite's right to relief necessarily depend on resolution of a substantial question of federal patent law, this court does not have jurisdiction over this appeal. The action is a state law contract dispute over know-how royalties brought pursuant to the district court's diversity jurisdiction. Therefore, we transfer the appeal to the United States Court of Appeals for the Tenth Circuit.

## BACKGROUND

Competitive Technologies, Inc. ("CTI") owns U.S. Patent No. 4,940,658 (the "'658 patent"). The '658 patent claims a method for detecting deficiencies of vitamin $B_{12}$ and folate by assaying total homocysteine levels and correlating an elevated level of total homocysteine with a deficiency in either cobalamin or folate. Metabolite is a non-exclusive licensee of the '658 patent with the right to sublicense. It also developed know-how technology, including software, to automate the testing process. In 1991, Metabolite granted LabCorp a license to the know-how and a sublicense to the '658 patent ("License Agreement"). The License Agreement covered four assays, including a total homocysteine assay referred to as the "homocysteine-only assay." In 1998, LabCorp began using an alternative homocysteine-only assay in serum samples using an immunoassay kit developed by Abbott Laboratories (the "Abbott Test") and stopped paying both patent and know-how royalties on just the serum-based homocysteine-only

assays.[1]  Metabolite and CTI brought an action against LabCorp for breach of contract and patent infringement.  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 2001 WL 34778749 (D. Colo., Dec. 3, 2001) ("Metabolite I") (jury trial) aff'd, 370 F.3d 1354 (Fed. Cir. 2004) ("Metabolite II"), cert. granted, 546 U.S. 999 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

A.

In the first case, Metabolite claimed breach of contract with respect to the homocysteine-only assay for failing to pay know-how royalties and sought contract damages, and CTI claimed patent infringement and sought infringement damages.  The case was tried before a jury (Metabolite I).  LabCorp contended that because the Abbott Test did not infringe the '658 patent it was not a Licensed Assay as defined by the License Agreement.  The termination provision of the License Agreement states in relevant part:

> 4.02 [LabCorp] shall have the right . . . to terminate this Agreement with respect to a particular Licensed Assay if (i) in the case of Licensed Assays of homocysteine, a more cost effective commercial alternative is available that does not infringe a valid and enforceable claim of the Licensed Patents; . . . . [2]

J.A. 8999.  Thus, LabCorp argued, it did not violate its contractual obligations for the homocysteine-only assay as to either the know-how license or the patent sublicense.

---

[1] LabCorp tests for total homocysteine in both urine and plasma. LabCorp continued to pay royalties for its urine-based assays utilizing Metabolite's gas chromatography/mass spectrometry know-how.  LabCorp also continued to pay royalties on the three other licensed assays that tested for deficiencies in vitamin $B_{12}$ and/or folate also using the royalty-bearing GCMS method.  Only the serum-based homocysteine-only assay was the subject of the lawsuits below.

[2] Pursuant to § 4.02 of the License Agreement, LabCorp could sever and terminate the License Agreement as to individual Licensed Assays.  Subsections (ii)-(iv), not quoted above, provide how LabCorp could selectively terminate the remaining three Licensed Assays.

2008-1597                                    3

A Special Verdict Form was submitted to the jury. It was asked the threshold question of whether the License Agreement had been terminated with respect to the homocysteine-only assay.

> Do you find, by a preponderance of the evidence, that LabCorp breached its license agreement by terminating it with respect to its performance of the Abbott [T]est?

J.A. 21072-73. The jury found in the affirmative. It awarded infringement damages to CTI of $1.02 million and breach of contract damages to Metabolite of $3.65 million.

Upon Metabolite's and CTI's post-verdict motions in Metabolite I, the district court granted a permanent injunction to enjoin LabCorp from performing any homocysteine-only assay, including any homocysteine-only assay performed using the Abbott Test. LabCorp moved for a stay pending appeal, and the court entered the stay subject to LabCorp paying a 6% royalty to CTI for all homocysteine-only assays performed after entry of judgment. LabCorp was further required to provide Metabolite with an accounting of the 21.5% of the sales attributable to the homocysteine-only assays that LabCorp performed after entry of judgment.

This court affirmed the jury's finding that LabCorp breached the License Agreement holding that LabCorp's refusal to pay royalties was a material breach that constitutes termination even if the contract requires written notice. See Metabolite II, 370 F.3d at 1370. Once the stay of the injunction was lifted, LabCorp stopped performing the homocysteine-only assays itself but outsourced the assay by entering into an agreement with Specialty Laboratories, Inc. ("Specialty") that was independently licensed by CTI to perform the homocysteine-only assays referred by LabCorp. In response, Metabolite filed a post-judgment motion in Metabolite I asserting that

2008-1597                                  4

LabCorp's referral of the assays to a third party violated the injunction. LabCorp also filed a post-judgment motion in Metabolite I seeking clarification of the injunction.

Simultaneously, LabCorp filed a new action in the same district court seeking a declaratory judgment that it had not violated the License Agreement. Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 571 F. Supp. 2d 1199 (D. Colo. 2008) ("Metabolite III") (instant matter below). On September 21, 2006, the district court ruled on the post-judgment motions, filed in Metabolite I, and stated in relevant part:

> [T]here has never been a legal determination that LabCorp actually committed any breach after the date of the Amended Judgment, or of the amount of any resulting damages. Because there are no claims remaining in this case, the issue of whether actions taken by LabCorp subsequent to the Amended Judgment constitute breach of contract, and the amount of damages for any such breach, cannot be resolved herein as a matter of procedure. As a result, the Court is not able to state in this case, at this juncture, that the amount stated on the letter of credit is now "due and owing to Metabolite Laboratories." However, LabCorp has filed a separate action [Metabolite III], seeking "a declaratory judgment that LabCorp has not violated the Agreement with various conduct occurring since the time period covered by the Amended Judgment and occurring into the future." Whether LabCorp committed a contract breach after the date of the Amended Judgment is appropriately resolved in [Metabolite III].

J.A. 21124-25 (emphasis added). The '658 patent expired on July 9, 2007.

### B.

As noted above, in Metabolite III, LabCorp brought a declaratory judgment action, premised upon diversity jurisdiction, under 28 U.S.C. § 1332, seeking a judgment on "whether Metabolite can recover damages for activity occurring after the time period covered by the Amended Judgment with respect to a part of an Agreement that has been terminated," and "whether LabCorp's outsourcing activity violates any existing contract between LabCorp and Metabolite." In response to the declaratory

judgment action, Metabolite counterclaimed for breach of contract, among other state-law claims, including breach of obligation of good faith and fair dealing, unjust enrichment, promissory estoppel, fraud, and equitable estoppel. The breach of contract claim was premised on LabCorp's continued referral of homocysteine-only assays to a third party without paying know-how royalties after entry of the jury's verdict. The parties filed cross motions for summary judgment. LabCorp moved for judgment on its contract claim and on each of Metabolite's counterclaims, and Metabolite moved for judgment on LabCorp's declaratory judgment claim and its breach of contract counterclaim. The Metabolite III district court held that no further royalties were due under the License Agreement. The court further stated that "[a] plain reading of the verdict form, coupled with the language of the License Agreement, leads to the conclusion that the License Agreement was both breached and terminated," and resulted in the loss of all rights (both patent and know-how) under the contract, albeit limited to the homocysteine-only assay. Metabolite appeals.

On appeal, LabCorp filed a motion to dismiss or, in the alternative, transfer the appeal to the Tenth Circuit, for lack of jurisdiction. On February 2, 2009, a motion panel of this court denied the motion without prejudice to allow the parties to raise the jurisdictional issues in their merits briefs. The issue of this court's jurisdiction over Metabolite's appeal is now squarely before us.

DISCUSSION

Before reaching the merits of this case, we must, however, first address whether we have appellate jurisdiction under 28 U.S.C. § 1295(a) (1).

Under 28 U.S.C. § 1295(a)(1), this circuit has exclusive jurisdiction over an appeal from a final decision of a district court "if the jurisdiction of that court was based, in whole or in part, on § 1338." See Bd. of Regents, Univ. of Tex. v. Nippon Tel. & Tel. Corp., 414 F.3d 1358, 1361 (Fed. Cir. 2005). Section 1338(a) confers the district courts with original jurisdiction over "any civil action arising under any Act of Congress relating to patents." The Supreme Court in Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988) outlined a two-part test for § 1338 jurisdiction. Under Christianson, "arising under" jurisdiction "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Christianson, 486 U.S. at 808-09. The Supreme Court in Christianson and also in Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 830 (2002), grafted § 1331 precedent onto its § 1338 analysis and equated the statutory "arising under" standard under § 1338 for patent cases with that established for claims invoking general federal question under § 1331. Christianson, 486 U.S. at 808-09; Vornado, 535 U.S. at 830. Accordingly, the Supreme Court's decision in Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing., 545 U.S. 308, 314 (2005), addressing general federal question jurisdiction refined the Christianson two-part test for § 1338 jurisdiction by requiring a determination of whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of

federal and state judicial responsibilities." Grable, 545 U.S. at 314; see also Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006).

Under the well-pleaded complaint rule, "arising under" jurisdiction is determined from the plaintiff's statement of his or her own claim "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Christianson, 486 U.S. at 809 (internal quotation marks and citation omitted). In an action for declaratory judgment, we look "not to the declaratory judgment complaint, but to the action that the declaratory defendant would have brought." Speedco Inc. v. Estes, 853 F.2d 909, 912 (Fed. Cir. 1988); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1578 (Fed. Cir. 1993).

Metabolite, as the appellant, bears the burden of demonstrating that its hypothetical claim depends on resolution of a substantial question of federal patent law. Christianson, 486 U.S. at 808-09. The question is, does Metabolite's hypothetical claim necessarily raise a stated patent law issue that is actually disputed and substantial. See Grable, 545 U.S. at 314. Metabolite does not meet this burden.

A.

Metabolite's hypothetical claim would have been a breach of contract claim premised on LabCorp's continued referral of homocysteine-only assays to a third party without paying know-how royalties on its post-judgment "Net Sales of Licensed Assays." Under the License Agreement, the payment of royalties to Metabolite was for performance by LabCorp or referral of a Licensed Assay by LabCorp to Metabolite.

> Section 2.02 In consideration of the grants made in Article 1, [LabCorp] agrees to pay to [Metabolite] a royalty of 21.5% in respect to [LabCorp's] Net Sales of Licensed Assays other than Referral Assays.

J.A. 20784 (emphasis added). The Licensed Assays cover four types of assays:

> (i) assays of homocysteine using methods and materials falling within the claims of the <u>Licensed Patents</u>; . . . (ii) [methylmalonic acid]. . . (iii) [2-methylcritic acid] . . . (iv) [cystathionine]. . . .

J.A. 20782-83 (emphasis added). "Licensed Patents" is defined as the '658 patent and any patents issuing from any continuations, continuations-in-part, divisions, and/or reissues therefrom.

We have held "that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a)." <u>Bd. of Regents</u>, 414 F.3d at 1363. In its hypothetical claim, Metabolite would be required to prove the elements of a breach of contract cause of action under New Jersey law—existence of a valid contract, breach, and damages. <u>See, e.g.</u>, <u>Grow Co., Inc., v. Chokshi</u>, 959 A.2d 252, 269 (N.J. Super. Ct. App. Div. 2008). Metabolite contends that its entitlement to royalties requires it to prove infringement as a necessary component of the breach element, i.e., "whether the homocysteine[-only] assays performed by LabCorp fell within the claims of the Licensed Patents and therefore were Licensed Assays." Petr.'s Rep. Br. 19. Because infringement of the '658 patent was determined in <u>Metabolite I</u>, here Metabolite's hypothetical action does not require resolution of a disputed question of patent law central to the disposition of the breach of contract claim. <u>See</u> <u>Grable</u>, 545 U.S. at 314-15 (conferring federal jurisdiction where plaintiff's state-law complaint, which sought to quiet title to property that the IRS seized and sold at auction, depended solely on a dispute about the adequacy of the IRS's compliance with seizure notification procedures set forth in the federal tax law). To be clear, we are not setting forth a new rule of law

that a concession after the filing of a complaint operates to defeat jurisdiction. Such a rule would be contrary to established precedent. See Keene Corp. v. United States, 508 U.S. 200, 207 (1993)(citing Mollan v. Torrance, 22 U.S. 537, 539 (1824)("It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events.")).

Grable and Empire Healthchoice guide our analysis. First, for jurisdiction to exist in our court, the substantial question of patent law must be disputed and require resolution on the merits. Christianson, 486 U.S. at 808-09; Empire Healthchoice, 547 U.S. at 700-01. Here, the jury verdict and subsequent judgment in Metabolite I determined that the homocysteine-only assay is a Licensed Assay because it infringes the '658 patent, and LabCorp materially breached the License Agreement by performing assays without paying know-how royalties. See Special Verdict Form at J.A. 21072-74. We affirmed. See Metabolite II, 370 F.3d at 1370. The issue of infringement, therefore, has been resolved and is no longer disputed. Accordingly, Metabolite's hypothetical breach of contract claim presents this court with no disputed issue of patent law. See Speedco, 853 F.2d at 912-13 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983), for the proposition that "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims").

This is not a case in which the contract claim requires resolution of a related question of patent law. Cf. Air Measurement Tech., Inc. v. Akin Gump Strauss Hauer & Feld, LLP, 504 F.3d 1262, 1272 (Fed. Cir. 2007) (finding a disputed, substantial issue of patent law exists when a party is required to prove its patent infringement suit to satisfy

the "but for" causation requirement of a state legal malpractice claim); Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1285 (Fed. Cir. 2007) (same); U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (holding that the exercise of § 1338 jurisdiction by a district court is proper when a plaintiff, in order to succeed on a breach of contract action, is required to prove that certain of defendant's products infringe). Such cases are distinguishable because the instant matter does not present a "case within a case." Here, it is undisputed that the post-trial conduct falls within the scope of the '658 patent. While the finding of breach is based on a finding of infringement, the district court would not have to conduct an infringement analysis because Metabolite I established infringement and neither party contests that decision. Moreover, in Board of Regents, we clarified the scope of Valves and made clear that not "all breach of contract actions involving patents require" a determination of patent infringement. Bd. of Regents, 414 F.3d at 1364.

Second, the mere presence of a patent as relevant evidence to a claim does not by itself present a substantial issue of patent law. See Excelstor Tech., Inc. v. Papst Licensing GMBH & Co. KG, 541 F.3d 1373, 1376-77 (Fed. Cir. 2008) (affirming dismissal for lack of § 1338 jurisdiction when declaratory judgment claim raised patent exhaustion to challenge royalties due under a license agreement). Like the declaratory defendant in Speedco, Metabolite's claim would concern only state law contract claims. Speedco, 853 F.2d at 912-13 (dismissing the declaratory judgment complaint for lack of § 1338 jurisdiction because defendant's hypothetical claim would be to recover damages under a contract to transfer patent ownership and plaintiff's patent claims only related to possible state law defenses). This case is even more attenuated than

<u>Speedco</u> because here the subject of the contractual dispute is not a patent, but rather know-how rights that refer to a patent. <u>Id.</u> at 912.

Unlike <u>Grable</u> where the "meaning of the federal tax provision . . . [was] an important issue of federal law that sensibly belongs in federal court," breach of contract is a fact specific application of state law. <u>Empire Healthchoice</u>, 547 U.S. at 700. Though significant to Metabolite's claim, a breach of contract analysis would not require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers." <u>Grable</u>, 545 U.S. at 312. Hearing a context-driven, state law contract issue in this court provides no "hope of uniformity" in the patent laws. And adjudication of patent law issues in the decisions of a regional circuit court would not defeat Congress's goal of uniformity in the patent laws. <u>See</u> <u>Speedco</u>, 853 F.2d at 913-14 ("[T]he statutory limitations on the jurisdiction of this court and the federal district courts, in conjunction with the well-pleaded complaint rule, can and do result in state courts resolving patent issues."); <u>Green v. Hendrickson Publishers, Inc.</u>, 770 N.E. 2d 784, 793 (Ind. 2002) (relying on <u>Vornado</u> to conclude in dicta that state courts can hear patent law claims included in the answer and/or counterclaims because post-<u>Vornado</u> a patent law counterclaim does not "arise under" within the meaning of § 1338). Because the issue of patent law is not disputed and substantial, we do not have jurisdiction over this appeal. <u>See</u> <u>Grable</u>, 545 U.S. at 314-15.

The dissent's argument is based on a fundamental misunderstanding that because LabCorp began to outsource the homocysteine-only assays after this court issued its decision finding infringement, this court could not have resolved the issue of whether LabCorp's outsourced assays infringe the '658 patent. Dissent, Op. at 4-5. But

at the time of filing of the complaint, neither party contended that the outsourced homocysteine-only assays were different from the infringing in-house Abbott Test. See Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co., 270 U.S. 580, 586 (1926) (Jurisdiction depends upon "the state of things existing at the time the suit was brought."). The dissent cites to LabCorp's statement in the second case's Final Pretrial Order, where LabCorp stated that "the homocysteine-only assays at issue in this case are not 'Licensed Assays,'" as a concession that Metabolite would have to establish that the outsourced homocysteine assays were in fact covered by the '658 patent in order to prevail on its claim. However, the pretrial order is not relevant because jurisdiction over a declaratory judgment action must be derived from Metabolite's hypothetical claims. The one-count complaint requested resolution of a contract dispute—a declaration regarding whether the judgment in Metabolite I terminated the know-how license, and if the agreement was still valid whether it was contractually obligated to pay a royalty on homocysteine-only assays performed by a third party. Thus, Metabolite's hypothetical claims could not involve resolution of a substantial question of patent law because it was undisputed that the outsourced conduct is the same as the in-house performance of the Abbott Test.[3] Therefore, the issue is not whether the outsourced assays fall within the claims of the '658 patent but whether LabCorp breached the terms of the License Agreement by its outsourcing activity.

Also, we do not agree that the res judicata effect of a prior judgment under a

---

[3] At oral argument, counsel for Metabolite acknowledged that the outsourced assays are the same as the infringing, in-house assays. Oral Arg. at 10:12-11:00 ("We took the position, and still take the position, that the fact that these assays are covered by the patent can't be disputed because the judgment of the first case is that these assays are covered by the patent.").

"look through" approach provides the missing jurisdictional predicate under § 1338. Dissent, Op. at 3. Relying on Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001), and Vaden v. Discover Bank, 129 S. Ct. 1262 (2008), the dissent claims that "if a claimant is bringing a suit to enforce or determine the res judicata effect of a prior judgment 'arising under' federal patent laws, that is a suit that itself arises under the federal patent laws." Dissent, Op. at 4. However, in Semtek, the Supreme Court simply recognized that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity" and then announced as a matter of federal common law that such an effect is governed by "the law that would be applied by state courts in the State in which the federal diversity court sits." 531 U.S. at 507-08. Semtek is inapposite here because the Metabolite I court's jurisdiction was not based on diversity. Furthermore, in Vaden, the Supreme Court interpreted § 4 of the Federal Arbitration Act, which authorizes a district court "to entertain a petition to compel arbitration if the court would have jurisdiction, 'save for [the arbitration] agreement,' over 'a suit arising out of the controversy between the parties.'" 129 S. Ct. at 1267-68 (alteration in original); see 9 U.S.C. § 4. According to the Vaden Court, "a complaint purporting to rest on state law, we have recognized, can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal." 129 S. Ct. at 1273. The Court then approved this so-called "look through" approach in the context of § 4, explaining that "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." Id. The present case, by contrast, does not invoke § 4 of the Federal Arbitration Act and cannot be recharacterized as one arising under federal patent law. Thus the "look through"

approach does not support the dissent's position.

All federal courts are courts of limited jurisdiction, and we do not take jurisdiction over cases simply because they relate to the res judicata effect of our prior judgment. We have considered the remainder of Metabolite's arguments and find them unpersuasive.

CONCLUSION

Metabolite has thus failed to show that we have jurisdiction under 28 U.S.C. § 1338 to resolve this case on the merits. Accordingly, pursuant to 28 U.S.C. § 1631, we consider it in the interest of justice to transfer the present appeal to the Tenth Circuit.

TRANSFERRED TO TENTH CIRCUIT

COSTS

Costs to Appellee.

# United States Court of Appeals for the Federal Circuit

2008-1597

LABORATORY CORPORATION OF AMERICA HOLDINGS
(doing business as LabCorp),

Plaintiff-Appellee,

v.

METABOLITE LABORATORIES, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the District of Colorado in case no. 04-CV-1662, Senior Judge Zita L. Weinshienk.

DYK, Circuit Judge, dissenting.

At its heart, this case involves the question whether the res judicata effect of our earlier decision in Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings, 370 F.3d 1354 (Fed. Cir. 2004) ("Metabolite II"), requires that the contract provision here be treated as terminated. The majority finds that we lack jurisdiction over that question and transfers to the 10th Circuit, so that the 10th Circuit must determine the res judicata effect of our prior judgment. In my view, jurisdiction over this case lies in this court for at least two reasons. First, we have jurisdiction because a suit to enforce or determine the res judicata effect of a prior judgment "arising under" the federal patent laws is itself a suit that arises under the federal patent laws. Second, the determination of contract entitlement rests on a substantial question of patent law.

I

The present case arises from a declaratory judgment action filed in 2005, Laboratory Corp. of America Holdings v. Metabolite Laboratories, Inc., 571 F. Supp. 2d 1199 (D. Colo. 2008) ("Metabolite III"), subsequent to our decision in Metabolite II, affirming Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings, No. 99-CV-870, 2001 WL 34778749 (D. Colo. Dec. 3, 2001) ("Metabolite I"). Laboratory Corporation of America Holdings ("LabCorp") sought a declaration that Metabolite Laboratories, Inc. ("Metabolite") was not entitled to recover breach of contract damages for activity occurring after the time period covered by the Amended Judgment in Metabolite I, because the jury in Metabolite I had found that the License Agreement had been terminated as to the homocysteine-only assay. Metabolite III, 571 F. Supp. 2d at 1204. Metabolite opposed declaratory relief, contending that the jury had not terminated the License Agreement as to homocysteine assays, and that LabCorp breached the still-valid license through its post-judgment performance of the homocysteine-only test and refusal to pay know-how royalties. Id. Thus, the scope of the prior judgment in Metabolite II is part of Metabolite's hypothetical claim in this case,[1]

---

[1] In a declaratory judgment action, the court must look to the hypothetical action that the declaratory defendant would have brought, rather than the complaint, in order to determine whether jurisdiction attaches. See Speedco, Inc. v. Estes, 853 F.2d 909, 912 (Fed. Cir. 1988).

because the existence of a valid contractual obligation is a necessary predicate to recovery of damages for breach of such contractual obligation.[2]

In order to adjudicate Metabolite's claim on the merits in this case, we would be required to determine the scope of our prior judgment in Metabolite II, and assess whether it would be entitled to res judicata effect. The issue of the res judicata effect of the prior judgment suffices for the exercise of "arising under" jurisdiction. The res judicata effect of a prior federal court judgment is itself determined by federal law. See, e.g., Stoll v. Gottlieb, 305 U.S. 165, 171-72 (1938); Deposit Bank v. Frankfort, 191 U.S. 499, 514-15 (1903); see also Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-08 (2001). A suit to determine the res judicata effect of a judgment thus arises under federal law.[3] The question is whether it also "arises under" federal patent law. See 28 U.S.C. § 1338(a).

That question depends on whether we should "look through" the prior judgment to determine whether it is predicated on an action that "arises under" the federal patent laws. The Supreme Court's decision in Semtek International (which looked through the original judgment to determine that it rested on diversity) supports looking through the prior judgment to determine the original source of jurisdiction in order to characterize the judgment for res judicata purposes. 531 U.S. at 508-09. Similarly, under Vaden v. Discover Bank, 129 S. Ct. 1262 (2009), the Supreme Court approved the "look through"

---

[2] See, e.g., Persson v. Scotia Prince Cruises, Ltd., 330 F.3d 28, 34 (1st Cir. 2003) ("A breach of contract complaint must allege (1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages."); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1235, at 388-91 (3d ed. 2004).

[3] In contrast, a suit to collect on a federal law judgment does not present a federal question. See Metcalf v. Watertown, 128 U.S. 586, 588 (1888).

approach to "arising under" jurisdiction in the context of the Federal Arbitration Act. Id. at 1273 ("A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law . . . ."). Under the look through approach, since the original judgment here depended in part on patent jurisdiction, we have jurisdiction over the appeal. In other words, if a claimant is bringing a suit to enforce or determine the res judicata effect of a prior judgment "arising under" federal patent laws, that is a suit that itself arises under the federal patent laws.

II

Even putting to one side the res judicata issue, the majority has adopted an erroneous construction of "arising under" jurisdiction under 28 U.S.C. § 1338(a) as to the underlying contract claim. When filed, this case presented a substantial disputed issue of patent law that had not been determined in our earlier decision in Metabolite II. It is undisputed that the contract between LabCorp and Metabolite does make an issue of patent law a determinative issue in this case. The royalties under the License Agreement are tied to net sales of "Licensed Assays," and licensed assays for homocysteine are defined as "assays . . . using methods and materials falling within the claims of the Licensed Patents." J.A. 20782. Thus, royalties are only due under the agreement if the assays LabCorp sold fall within the scope of the licensed patents, i.e., only if the unauthorized sales would be infringing.

Under very similar facts in U.S. Valves, Inc. v. Dray, 212 F.3d 1368 (Fed. Cir. 2000), we concluded that the case raised a substantial question of federal patent law, and that jurisdiction existed. See id. at 1372. In Valves, the plaintiff (an exclusive patent licensee) brought an action against the licensor, alleging breach of contract

based on the licensor's sale of allegedly equivalent valves in contravention of the exclusive license agreement. We held that in order to show that the licensor sold valves in contravention of the agreement, the licensee was required to show that the licensor sold valves that were covered by the licensed patents. Consequently, "a court must interpret the patents and then determine whether the . . . valve[s] infringe[] these patents. Thus patent law is a necessary element of U.S. Valves' breach of contract action." Id.

In this case, as in Valves, the question of whether LabCorp breached the agreement to pay "know-how" royalties necessarily turns on the question of infringement of the '658 patent, and this implicates a substantial question of patent law. The majority does not appear to dispute this point. Instead, the majority points to Supreme Court cases stating that the federal issue must be "actually disputed" and concludes that there is no substantial disputed issue of patent law here because infringement of the '658 patent was determined in our earlier decision and is now not contested. Majority Op. at 10. The majority's reasoning is flawed in two critical respects: (1) our decision in Metabolite II did not in fact determine whether the outsourced assays were covered by the patent claims, and (2) the fact that the federal issue becomes undisputed after the case was filed does not deprive a court of jurisdiction.

The original Metabolite case involved the question of whether LabCorp induced infringement of claim 13 of the '658 patent. See Metabolite II, 370 F.3d at 1358-59. Claim 13 of the '658 patent claims the total homocysteine test: "[a] method for detecting a deficiency of cobalamin or folate in warm-blooded animals comprising the steps of:

assaying a body fluid for an elevated level of homocysteine; and correlating an elevated level of total homocysteine in said body fluid with a deficiency of cobalamin or folate." '658 patent col.41 ll.58-65.  Metabolite's theory at the first trial was apparently that the Abbott assays were licensed assays because LabCorp had induced infringement of claim 13 of the patent with respect to the Abbott assays.  See Appellee's Br. 50, Metabolite II, 370 F.3d 1354 (No. 03-1120).

Once we issued our mandate in Metabolite II on August 12, 2004, and the injunction stay was lifted, LabCorp stopped performing homocysteine-only tests itself and instead entered into an agreement with Specialty Laboratories, Inc. ("Speciality"), which is licensed by Competitive Technologies, Inc. under the '658 patent, for Specialty to perform homocysteine-only tests for LabCorp.  Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, No. 99-cv-870-ZLW-CBS, slip op. at 8-9 (D. Colo. Sept. 21, 2006).  This court in Metabolite II did not address the question of whether the outsourced assays were licensed assays.  At the time the complaint was filed in this case, there was a substantial, disputed issue of patent law, because the issue of whether the outsourced homocysteine assays were in fact covered by the '658 patent claims was contested by LabCorp.

The theory in Metabolite I was not (as the majority assumes) that the Abbott assays standing alone were "licensed assays" protected by the '658 patent, but that the Abbott assays were "licensed assays" because LabCorp had induced infringement of claim 13 of the patent using those assays; claim 13 of the patent did not in fact specify use of a patented assay.  See '658 patent col.41 ll.58-65.  The inducement issue with

respect to the outsourced assays could well have been different than the original inducement question resolved in Metabolite I.

In its initial complaint in this case in the district court, LabCorp sought a declaratory judgment that it was not liable for any royalties with respect to the newly outsourced homocysteine-only assays. First Amended Complaint for Declaratory Judgment at 5, Metabolite III, 571 F. Supp. 2d 1199 (No. 04-cv-1662). As referenced in the Final Pretrial Order signed by both parties, LabCorp asserted that the homocysteine assays were not "Licensed Assays" because they did not fall within the claims of the '658 patent. Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., No. 04-cv-1662, slip op. at 3 (D. Colo. Feb. 7, 2008) (final pretrial order). At oral argument, counsel for LabCorp conceded that "it is possible that the court could have had to decide [the question of whether the outsourced homocysteine assays fell within the claims of the '658 patent] in this case." Oral Arg. at 22:58-23:01. In order for Metabolite to prevail on its hypothetical claim for royalties, it would have had to establish that the outsourced homocysteine assays were in fact covered by the '658 patent.

The fundamental error of the majority is that, while it claims otherwise, it fails to look at the controversy prevailing at the time that the complaint was filed. Under established Supreme Court authority, later concessions (such as those ultimately made in this case that the outsourced assays were licensed assays) do not operate to defeat jurisdiction that rightfully attached at the outset of the case. See, e.g., Dole Food Co. v. Patrickson, 538 U.S. 468, 478 (2003); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of suit . . . do not oust jurisdiction."); Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin

Union Ry. Co., 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."); Anderson v. Watt, 138 U.S. 694, 702-03 (1891) ("And the [jurisdictional] inquiry is determined by the condition of the parties at the commencement of the suit."); Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought, and . . . after vesting, it cannot be ousted by subsequent events.").

Thus, I think that the district court had jurisdiction over this case under 28 U.S.C. § 1338(a), and we accordingly can and must address the merits. I respectfully dissent from the majority's contrary holding.