# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Magnetek, Inc. v. Kirkland & Ellis, LLP*, 2011 IL App (1st) 101067

---

| | |
|---|---|
| Appellate Court Caption | MAGNETEK, INC., a Delware Corporation, Plaintiff-Appellant, v. KIRKLAND AND ELLIS, LLP, an Illinois Limited Liability Partnership, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1–10–1067 |
| Filed | June 30, 2011 |
| Rehearing denied | July 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in dismissing plaintiff's legal malpractice action arising from the representation defendant provided in a patent infringement case for lack of subject matter jurisdiction based on the ground that the underlying complaint involved substantial issues of federal patent law over which federal courts have exclusive jurisdiction, notwithstanding the fact that a finding of legal malpractice would depend on the unenforceability of a particular patent, since the trial court would not have to conduct an independent analysis of unenforceability because a federal district court had already established the merits of that claim, the district court's decision was affirmed on appeal and neither party contested those decisions, and therefore, there was no disputed federal patent issue raised in the legal malpractice complaint that would give rise to federal jurisdiction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08–L–008970; the Hon. Charles R. Winkler, Judge, presiding. |

| Judgment | Reversed and remanded. |
|---|---|
| Counsel on Appeal | Martin C. Washton, of Towle Denison Smith & Maniscalco, LLP, of Los Angeles, California, and Mitchell B. Katten and Joshua R. Diller, both of Katten & Temple, LLP, of Chicago, for appellant. |
| | Michael L. Shakman, Arthur W. Friedman, Diane F. Klotnia, and Alexandra K. Block, all of Miller Shakman & Beem LLP, of Chicago, for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Justices Karnezis and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Magnetek, Inc. (Magnetek), filed a complaint in the circuit court of Cook County for legal malpractice against defendant, Kirkland & Ellis (Kirkland), for its allegedly deficient representation in a patent infringement lawsuit. The circuit court dismissed the complaint for lack of subject matter jurisdiction, reasoning that the underlying complaint involved substantial issues of federal patent law over which the federal courts have exclusive jurisdiction. Magnetek now appeals, arguing that its complaint does not implicate substantial issues of patent law because it merely requires the circuit court to resolve factual issues related to the underlying plaintiff's inequitable conduct before the United States Patent and Trademark Office. Moreover, Magnetek argues that the circuit court failed to consider principles of federalism in making its ruling, in contravention of United States Supreme Court case law. For the following reasons, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 2                    I. BACKGROUND

¶ 3                  A. The Underlying Lawsuit

¶ 4    In 1998, an inventor named Ole Nilssen filed a patent infringement lawsuit against Magnetek in the United States District Court for the Northern District of Illinois (underlying lawsuit). Nilssen v. Magnetek, Inc., No. 98–CV–2229 (N.D. Ill.). Magnetek initially retained Kirkland to represent it in that action. Nilssen's complaint alleged that Magnetek infringed on seven patents owned by him, including United States Patent Number 5,432,409 (the '409 patent). See Nilssen v. Magnetek, Inc., No. 05 C 2933, 2008 WL 1774984, at *1 (N.D. Ill. Apr. 16, 2008) (mem. op.). In the course of that litigation, Magnetek entered into a settlement

agreement with Nilssen in which Nilssen agreed to dismiss his infringement action in the district court and the parties agreed to arbitrate the dispute. *Magnetek*, 2008 WL 1774984, at *1. On April 29, 2005, the arbitrator found in favor of Nilssen and awarded him $23,352,439.63 in damages. *Magnetek*, 2008 WL 1774984, at *1. The parties later settled the matter for $18,750,000.

¶ 5    Nilssen then filed a petition for confirmation of the arbitration award in federal district court. *Magnetek*, 2008 WL 1774984, at *1. Magnetek had retained new counsel and was not represented by Kirkland in this proceeding. Magnetek filed a petition to vacate the arbitration award. *Magnetek*, 2008 WL 1774984, at *1. Magnetek argued that subsequent to the arbitration, it learned that Nilssen allegedly concealed facts from the United States Patent and Trademark Office (USPTO) in the prosecution of the '409 patent that would have prevented issuance of the patent. Therefore, Magnetek argued, the arbitration award was procured as a result of Nilssen's fraud before the USPTO. Magnetek further contended that had it known of Nilssen's misconduct before the USPTO at the time of the arbitration, it would not have entered into the settlement agreement with Nilssen. *Magnetek*, 2008 WL 1774984, at *2.

¶ 6    On April 16, 2008, the district court held that it could only vacate the arbitration award if Magnetek produced clear and convincing evidence of fraud in the procurement of the arbitration award and that such evidence was not discoverable with due diligence prior to the arbitration. *Magnetek*, 2008 WL 1774984, at *2. The district court concluded that Magnetek had failed to make such a showing and denied its petition. Specifically, the court noted several times that Magnetek could have discovered evidence of the alleged misconduct at the time of the arbitration, but failed to do so. *Magnetek*, 2008 WL 1774984, at *3-5.

¶ 7    Additionally, the court noted that "at the arbitrator's suggestion, the parties entered into an agreement" whereby Nilssen "agreed not to present any arguments for willful infringement and in exchange Magne[T]ek agreed not to pursue a defense of inequitable conduct in regard to Nilssen's 'alleged inequitable conduct before the [USPTO].' " *Magnetek*, 2008 WL 1774984, at *5. Therefore, the court reasoned, it would not interfere with the arbitration award in order "to allow Magne[T]ek to sidestep its agreement" to waive an inequitable conduct defense. *Magnetek*, 2008 WL 1774984, at *5. Therefore, the court entered judgment on the arbitration award and denied plaintiff's petition to vacate. *Magnetek*, 2008 WL 1774984, at *7.


¶ 8                      B. Contemporaneous Litigation Involving the '409 Patent

¶ 9    In 2001, while the underlying litigation was pending, Nilssen filed a patent infringement lawsuit against another company, Osram Sylvania, in the same jurisdiction as the underlying lawsuit. *Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884 (N.D. Ill. 2006) (*Osram I*). *Osram I* involved the alleged infringement of 11 patents, including the '409 patent. Kirkland represented Osram in that case as well. *Osram I*, 440 F. Supp. 2d at 889. Osram filed a counterclaim for a declaratory judgment that the patents at issue, including the '409 patent, were unenforceable because Nilssen engaged in inequitable conduct before the USPTO during the patent application process, which should have precluded issuance of the patents. Specifically, with respect to the '409 patent, Osram alleged that Nilssen improperly claimed

-3-

and paid fees as a small entity, claimed an earlier filing date in the prosecution of the '409 patent than he was entitled to, and failed to disclose relevant litigation that was pending during the prosecution of the '409 patent. *Osram I*, 440 F. Supp. 2d at 889. Because of this misconduct, Osram argued that the '409 patent was unenforceable and could not be infringed.

¶ 10 The district court held a six-day bench trial on the allegations of inequitable conduct, which involved more than 400 exhibits and testimony from seven witnesses, including four expert witnesses and Nilssen himself. *Osram I*, 440 F. Supp. 2d at 889. On July 5, 2006, the district court issued its opinion declaring all 11 of the Nilssen patents at issue, including the '409 patent, unenforceable. *Osram I*, 440 F. Supp. 2d at 911. With respect to the '409 patent, the court specifically found that Nilssen (1) intentionally claimed and paid fees as a small entity despite entering into a licensing agreement that disqualified him from doing so (*Osram I*, 440 F. Supp. 2d at 903-04); (2) intentionally claimed incorrect filing dates during prosecution of the '409 patent in an effort to avoid disclosing certain "prior art"[1] and to obtain patent claims to which he otherwise would not be entitled (*Osram I*, 440 F. Supp. 2d at 908); and (3) intentionally failed to disclose relevant litigation that was pending at the time the '409 patent application was pending (*Osram I*, 440 F. Supp. 2d at 909-10).

¶ 11 On October 10, 2007, the United States Court of Appeals for the Federal Circuit affirmed. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007) (*Osram II*). The Federal Circuit noted the highly deferential standard of review applied to a district court's determination of inequitable conduct, which itself requires a clear and convincing standard of proof. *Osram II*, 504 F.3d at 1229. The Federal Circuit concluded that the patents in suit, including the '409 patent, were "unenforceable due to inequitable conduct in improperly claiming small entity status" (*Osram II*, 504 F.3d at 1233); the '409 patent, among others, was "unenforceable for inequitable conduct in misclaiming priority [filing dates]" (*Osram II*, 504 F.3d at 1233); and that the '409 patent, among others, was "unenforceable for inequitable conduct in failing to disclose the [relevant] litigation" pending during the patent prosecution period (*Osram II*, 504 F.3d at 1234). A petition for certiorari was denied in that case (*Nilssen v. Osram Sylvania, Inc.*, 554 U.S. 903 (2008)) and the Federal Circuit opinion is a final determination.

¶ 12                              C. Plaintiff's Legal Malpractice Suit

¶ 13 On August 14, 2008, following confirmation of the arbitration award in the underlying lawsuit, Magnetek filed a one-count complaint for legal malpractice against Kirkland in the circuit court of Cook County (circuit court), which is the subject of this appeal. In its complaint, Magnetek alleged that it retained Kirkland to represent it in the underlying patent litigation lawsuit. Shortly before the start of that trial, Magnetek alleged, Kirkland advised it to enter into the settlement agreement to arbitrate this dispute, which

---

[1]Prior art refers to the collection of "knowledge, usage, patents, and descriptions relating to an invention in existence" before the proposed invention is patented. A patent may not be granted where the proposed invention is anticipated by the prior art. 60 Am. Jur. 2d *Patents* § 93 (2005).

would focus on the '409 patent alone, and to forego any further discovery before the arbitration began. The arbitrator ultimately found in favor of Nilssen and awarded damages of more than $23 million. Magnetek later agreed to pay Nilssen $18,750,000 in satisfaction of the judgment.

¶ 14    Between the time of the arbitrator's ruling and Nilssen's petition to confirm the arbitration award in the district court, Magnetek alleged that it "fortuitously and independently" learned of the undisclosed prior art and Nilssen's misconduct before the USPTO that it claimed Kirkland should have discovered. Magnetek further alleged that that evidence was "used in two other cases involving Nilssen in which Nilssen's patents and patent claims were found to be unenforceable and invalid." Magnetek attempted to use this newly discovered evidence to vacate the arbitration award, which the district court rejected. Magnetek recounted the district court's finding that relief was not warranted because "[plaintiff's] counsel *** should have been able to ascertain such facts in time for the arbitration proceeding."

¶ 15    As a result of Kirkland's alleged negligence in "failing to investigate and discover the prior art and misconduct which had not been disclosed by Nilssen and entering into a settlement agreement which precluded any further discovery or investigation prior to an arbitration," Magnetek was prevented from "assert[ing] an effective defense that Nilssen engaged in inequitable conduct and fraud and that the patent was invalid and/or unenforceable." Magnetek alleged that as a proximate cause of Kirkland's negligence and breach of its professional duty, it was found liable on the judgment. Magnetek further alleged that it incurred attorney fees and expenses of more than $300,000 in seeking to vacate the arbitration award and defeat Nilssen's petition to confirm the award.

¶ 16    While the parties were engaged in discovery, this court issued an opinion in *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 395 Ill. App. 3d 629 (2009). In *Premier Networks*, this court determined that the federal courts have exclusive jurisdiction over legal malpractice cases in which the issues are "necessarily inextricably bound to determinations of substantive issues of patent law." *Premier Networks*, 395 Ill. App. 3d at 637.

¶ 17    Kirkland then filed a motion to dismiss the underlying lawsuit pursuant to section 2–619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(1) (West 2008)) (the Code), asserting that under *Premier Networks*, the circuit court lacked subject matter jurisdiction over the case because it involved substantial issues of patent law, which brought it within the exclusive jurisdiction of the federal courts. Specifically, Kirkland argued that to establish the proximate cause element of the malpractice claim, Magnetek would have to prove that but for Kirkland's alleged negligence, Magnetek would have persuaded the arbiter of the underlying lawsuit to deem the '409 patent unenforceable, meaning that no judgment for infringement of the '409 patent could stand. According to Kirkland, those questions must be resolved in federal court.

¶ 18    In response, Magnetek argued that its claim does not require the circuit court to resolve substantial issues of patent law. Rather, because its claim is based on Kirkland's failure to assert defenses in the underlying litigation that Kirkland successfully asserted for Osram's benefit, any substantive patent law issues relevant to the element of proximate cause have

already been decided by the *Osram* courts. Therefore, according to Magnetek, had Kirkland asserted the *Osram* defenses in Magnetek's case, the '409 patent would have been rendered unenforceable, as it was in the *Osram* cases, and incapable of sustaining a judgment of infringement.

¶ 19    Magnetek also asserted in its response motion that its case would rely on expert testimony to establish that: (1) the prior art and misconduct defenses used in the *Osram* case should have been used for its benefit in the underlying lawsuit; (2) the district court has determined, and the Federal Circuit affirmed, that such prior art and misconduct defenses defeated Nilssen's claims of infringement; and (3) in the underlying lawsuit, the district court concluded that Kirkland could have discovered such prior art and misconduct before recommending that Magnetek enter into the settlement agreement to arbitrate the dispute and forego any further discovery. Therefore, Magnetek argued, the circuit court would merely evaluate the expert testimony in deciding whether the arbitrator would have found the patent unenforceable in the absence of Kirkland's alleged negligence, rather than decide a substantive issue of patent law.

¶ 20    After briefing and oral argument, the circuit court granted Kirkland's motion, reasoning:

> "There is a great deal of overlapping patent law playing out in this case. I don't think the ultimate issue is this jury is going to decide what patent law is because that's been established.
>
> But the fundamentals of the case, as I understand it, will involve some very complicated issues that, quite frankly, the state courts have not been called upon to resolve. *** I think the Constitution says that the [f]ederal [c]ourts should concern themselves with cases involving the application of patent law. I think it is of substance here. I don't think it's the only issue. But to say that it's so remotely removed from [patent law] that it is not substantive, I can't do that."

Following dismissal of its complaint, Magnetek timely filed this appeal.

¶ 21                                II. ANALYSIS

¶ 22    Magnetek contends that the circuit court erred in dismissing its complaint for lack of subject matter jurisdiction under section 2–619(a)(1) of the Code. 735 ILCS 5/2–619(a)(1) (West 2008). A motion to dismiss pursuant to section 2–619 admits as true all well-pleaded facts, as well as reasonable inferences to be drawn therefrom. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008). We must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Wackrow,* 231 Ill. 2d at 422. We review the circuit court's dismissal *de novo. Wackrow*, 231 Ill. 2d at 422.

¶ 23    To evaluate Kirkland's challenge to the circuit court's subject matter jurisdiction, we return to first principles. By the power of the Illinois Constitution, our circuit courts are courts of general jurisdiction and have the power to hear " 'all justiciable matters.' " *Wauconda Fire Protection District v. Stonewall Orchards, L.L.P*, 214 Ill. 2d 417, 426 (2005) (noting, however, that the circuit courts cede original jurisdiction to the Illinois Supreme Court in certain limited circumstances) (quoting Ill. Const. 1970, art. VI, § 9). The circuit courts' jurisdiction is not limited only to state law causes of action, but rather, they " 'have

inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' " *Haywood v. Drown*, 556 U.S. ___, ___, 129 S. Ct. 2108, 2114 (2009) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). This "strong" presumption of concurrent state-federal jurisdiction is overcome only where Congress claims exclusive jurisdiction over a federal cause of action, or where a state court refuses jurisdiction for a neutral administrative purpose. *Haywood*, 556 U.S. at ___, 129 S. Ct. at 2114.

¶ 24        On the other hand, federal courts are courts of limited, and not general, jurisdiction. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986). Federal courts have the power to hear only those cases that are specifically authorized by the United States Constitution or acts of Congress. *Kokkonen*, 511 U.S. at 377. It is presumed that cases lie outside of this limited jurisdiction and the party asserting federal jurisdiction bears the burden of overcoming that presumption. *Kokkonen*, 511 U.S. at 377.

¶ 25        Article III of the United States Constitution endows federal courts with the power to hear cases "arising under" federal law. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807 (1986); U.S. Const., art. III, § 2. Congress subsequently codified that endowment, thereby creating general federal-question jurisdiction. *Merrell Dow*, 478 U.S. at 807; 28 U.S.C. § 1331 (2006). In the vast majority of cases, federal-question jurisdiction under section 1331 exists because the well-pleaded complaint alleges a cause of action that was created by federal law. *Merrell Dow*, 478 U.S. at 808.

¶ 26        However, the United States Supreme Court also determined long ago that in certain circumstances, a cause of action created by state law may "arise under" federal law, conferring federal-question jurisdiction, where it implicates a significant federal issue. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486 (1917)). There is no " 'single, precise, all-embracing' " test to determine when federal-question jurisdiction exists over state-law claims. *Grable*, 545 U.S. at 314 (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 821 (1988) (Stevens, J., concurring, joined by Blackmun, J.)). Early on, the Supreme Court held that a state-law claim could give rise to federal-question jurisdiction as long as it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]." *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921).

¶ 27        However, the Court has since retreated from the "somewhat generous statement of the scope of the doctrine" set forth in *Smith*. *Grable*, 545 U.S. at 313. Specifically, the Court has "sh[ied] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. Rather, the Court noted, from the first, it has only asserted federal-question jurisdiction over those state-law claims that " 'really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.' " *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)); see also *Gully v. First National Bank in Meridian*, 299 U.S. 109, 117-18 (1936) (invoking federal-question jurisdiction over state-law claims must be a " 'selective process which picks the substantial causes out of the web and lays the other ones aside' "). That is, the well-pleaded complaint must demonstrate that the claim

would be supported if the federal law was given one construction or effect, and defeated if it received another. *Gully*, 299 U.S. at 112. Mere recitation of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314.

¶28 Summarizing these principles, the Supreme Court recently framed the proper inquiry into federal-question jurisdiction as whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Thus, the inquiry focuses on two elements: (1) the presence of a disputed and substantial federal issue; and (2) abidance with "congressional judgment about the sound division of labor between state and federal courts governing the application of [federal-question jurisdiction]." *Grable*, 545 U.S. at 313-14. Both elements must be satisfied to confer federal jurisdiction over a state-law claim. *Grable*, 545 U.S. at 313-14. That is, despite the presence of a contested and substantial federal question, federal jurisdiction may be "vetoed" if it does not respect the " 'welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' " *Grable*, 545 U.S. at 313-14 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8 (1983)).

¶29 The requisite degree of substantiality of the underlying federal issue is an unsettled question. At its core, a federal issue is substantial if it implicates a "serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The Court's most recent decisions suggest that the federal interest in a state-law claim will rarely be so substantial as to warrant federal jurisdiction. See *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (describing those state-law claims warranting federal jurisdiction as a "special and small category" of cases).

¶30 In fact, the Court recently stated that a federal interest will be substantial enough to warrant federal jurisdiction where the question "present[s] a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern' " similar cases in the future. *Empire*, 547 U.S. at 700-01 (quoting Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 65 (2005 Supp.)); *Grable*, 545 U.S. at 314; see also Christopher G. Wilson, *Embedded Federal Questions, Exclusive Jurisdiction, and Patent-Based Malpractice Claims*, 51 Wm. & Mary L. Rev. 1237, 1259-60 (2009). But see *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007) (concluding that *Grable* did not require state-law claims to present pure questions of law to warrant federal jurisdiction).

¶31 In *Grable*, the underlying state-law case was an action to quiet title. The plaintiff alleged that the Internal Revenue Service (IRS) did not give it proper notice before seizing its property and selling it at a tax sale because, contrary to the Internal Revenue Code provisions, the IRS issued notice by certified mail rather than by personal service. *Grable*, 545 U.S. at 310-11. Therefore, the plaintiff alleged, the subsequent sale of its property to a third party was invalid. *Grable*, 545 U.S. at 311. The Court determined that the sole issue was "[w]hether Grable was given notice within the meaning of the federal statute." *Grable*,

545 U.S. at 315. Thus, the Court concluded, the meaning of a federal tax provision was "an important issue of federal law that sensibly belong[ed] in federal court" because the federal provision required a construction that would affect future IRS matters. *Grable*, 545 U.S. at 315. As *Empire* more precisely described, the issue "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases"; therefore, federal jurisdiction was warranted. *Empire*, 547 U.S. at 700.

¶ 32        At the same time, the Court specifically rejected the application of federal jurisdiction over state-law claims that are "fact-bound and situation-specific." *Empire*, 547 U.S. at 700-01. In *Empire*, the underlying state-law case was a personal injury lawsuit brought by the estate of a federal employee. *Empire*, 547 U.S. at 683. The employee had been insured under the Federal Employees Health Benefits Act of 1959 (FEHBA). 5 U.S.C. § 8901 *et seq*. (2000 ed. and Supp. III); *Empire*, 547 U.S. at 682. After the underlying personal injury lawsuit settled, the plaintiff, which administered the beneficiary's health plan, filed a breach of contract claim in federal court against the beneficiary's estate seeking reimbursement for the health care costs it paid on the beneficiary's behalf under the terms of the FEHBA contract. *Empire*, 547 U.S. at 683. Section 8902(m)(1) of the statute provides that FEHBA contract terms preempt state laws and regulations pertaining to coverage and benefits, including payments with respect to benefits. 5 U.S.C. § 8902(m)(1) (2000 ed. and Supp. III); *Empire*, 547 U.S. at 683. Additionally, it provides for original jurisdiction in the United States Court of Federal Claims for cases brought against the United States "founded on this chapter." 5 U.S.C. § 8912 (2000 ed. and Supp. III); *Empire*, 547 U.S. at 686.

¶ 33        The plaintiff argued that although the contract claim is governed by state law, the claim nevertheless arose under federal law because under *Grable*, federal law was a necessary element of its claim. *Empire*, 547 U.S. at 690. Notwithstanding the preemption and jurisdiction provisions of FEHBA, the Court held that there was no federal-question jurisdiction over the plaintiff's claim. *Empire*, 547 U.S. at 683. The Court explained that unlike *Grable*, the plaintiff's case did not involve a " 'pure issue of law' " that would affect future cases of its kind. *Empire*, 547 U.S. at 700-01. Rather, the case was "fact-bound and situation-specific," requiring the court to make detailed determinations about which services were properly attributable to the beneficiary's fatal accident and the apportionment of attorney fees. *Empire*, 547 U.S. at 701. The state court that heard the personal injury lawsuit was "competent to apply federal law" and was "best positioned" to determine the issues raised in the plaintiff's contract claim. *Empire*, 547 U.S. at 701. The Court further found that a legitimate federal interest in the health and welfare of federal employees was not sufficient to "squeeze[ ]" a garden-variety contract claim "into the slim category [of cases] *Grable* exemplifies." *Empire*, 547 U.S. at 701.

¶ 34        Turning to the issue in this case, the jurisdictional analysis is the same for questions that ostensibly "arise under" federal patent laws pursuant to 28 U.S.C. § 1338. Congress granted the federal courts exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338 (2006). Additionally, in 1982, Congress created the United States Court of Appeals for the Federal Circuit for the purpose of hearing

appeals from cases based "in whole or in part" on section 1338. 28 U.S.C. § 1295(a)(1) (2006); *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 807 (1988). In *Christianson*, the Court examined whether an appeal from an underlying case in the federal district court "arose under" the patent laws such that the appeal should have been heard by the Federal Circuit as opposed to the Seventh Circuit Court of Appeals. *Christianson*, 486 U.S. at 808-09.

¶ 35 In setting forth its analytical framework for answering that question, the Court telegraphed its "arising under" jurisprudence pertaining to section 1331 onto questions of jurisdiction under section 1338, for reasons of "[l]inguistic consistency." *Christianson*, 486 U.S. at 808-09. The Court then stated its jurisdictional test at the time as whether the plaintiff's " 'well-pleaded complaint establish[ed] either that federal [patent] law create[d] the cause of action or that the plaintiff's right to relief necessarily depend[ed] on resolution of a substantial question of federal [patent] law,' [citation], in that '[patent] law [was] a necessary element of one of the well-pleaded ... claims,'[citation]" as similarly stated in the Court's pre-*Grable* jurisprudence. Christianson, 486 U.S. at 809.

¶ 36 However, in light of the Supreme Court's declaration in *Christianson*, the newly articulated *Grable* analysis of federal-question jurisdiction under section 1331 must also apply when determining whether state-law claims "arise under" federal patent law pursuant to section 1338. See *Christianson*, 486 U.S. at 808-09. Thus, the jurisdictional question then becomes whether, based on the well-pleaded complaint, the state-law claim necessarily raises a stated federal patent law issue, actually disputed and substantial, which the federal courts may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. See *Grable*, 545 U.S. at 313.

¶ 37 Consistent with the concept of substantiality in a section 1331 jurisdiction analysis, the Court has specifically stated that to invoke section 1338 jurisdiction, " 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.' " *Christianson*, 486 U.S. at 807-08 (quoting *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259 (1897)); see also *Heath v. Zenkich*, 107 Ill. App. 3d 207, 210 (1982) (holding that circuit court had jurisdiction to determine patent ownership and inventorship rights asserted in property dispute). Similar to the notion that section 1331 jurisdiction exists over embedded questions of federal law that demand resolution to guide future cases, and not the application of the law in a fact-bound, situation-specific context, section 1338 "does not deprive the state courts of the power to determine questions arising under the patent laws." (Emphasis omitted.) *Pratt*, 168 U.S. at 259. Rather, state courts cannot assume jurisdiction over a "case" in which the well-pleaded complaint "sets up a right under the patent laws as [a] ground [of] recovery." *Pratt*, 168 U.S. at 259.

¶ 38 In 2007, the Federal Circuit issued a pair of cases addressing the federal courts' jurisdiction to hear state-law legal malpractice claims in which the underlying lawsuits involved patent matters. In *Air Measurement*, on an interlocutory appeal, the Federal Circuit determined as a matter of first impression that federal jurisdiction existed over a state-law malpractice claim where the underlying litigation was a patent infringement lawsuit. *Air Measurement*, 504 F.3d at 1267. *Air Measurement* followed the jurisdictional analysis set

forth in *Christianson*, which examined "whether patent law is a necessary element of [the plaintiff's] malpractice claim." *Air Measurement*, 504 F.3d at 1268. The plaintiff in *Air Measurement* alleged that its attorneys were negligent in prosecuting its patent infringement lawsuits against alleged infringers. Recognizing that a legal malpractice action requires a plaintiff to demonstrate that it would have prevailed in the underlying litigation absent the defendant's negligence, the court determined that a trial court would have to hypothetically adjudicate the merits of the underlying infringement claim. Therefore, it concluded, because proof of patent infringement is necessary to show that the plaintiff would have prevailed in the underlying lawsuit, patent infringement is a necessary element of the malpractice claim. *Air Measurement*, 504 F.3d at 1269. Accordingly, adjudication of the hypothetical infringement lawsuit presented a substantial question of patent law conferring federal jurisdiction. *Air Measurement*, 504 F.3d at 1269.

¶ 39    *Air Measurement* acknowledged that *Grable* retreated from the view that a state-law claim conveys federal-question jurisdiction "if it appears from the complaint that the right to relief requires construction or *application* federal law." (Emphasis in original.) *Air Measurement*, 504 F.3d at 1271. However, the court was unwilling to conclude that *Grable* intended to restrict federal jurisdiction to "only state law claims that involve constructions of federal statute[s] or pure questions of law." *Air Measurement*, 504 F.3d at 1272. Rather, the court concluded that *Grable* intended to focus the jurisdictional analysis on "federalism factors" that indicate a " 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.' " *Air Measurement*, 504 F.3d at 1271 (quoting *Grable*, 545 U.S. at 313).

¶ 40    Similarly, in *Immunocept v. Fulbright & Jaworski*, the Federal Circuit concluded that a legal malpractice case based on allegations of negligent drafting of patent claims also involved a substantial issue of federal law to confer federal jurisdiction. *Immunocept, LLC, v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1282 (Fed. Cir. 2007). Relying on *Air Measurement*, the court reiterated that federal courts have jurisdiction "where patent infringement is a necessary element of a legal malpractice claim." *Immunocept*, 504 F.3d at 1285 (citing *Air Measurement*, 504 F.3d at 1269). Therefore, it reasoned, federal courts must also have jurisdiction where the underlying malpractice lawsuit involves the scope of the patent's claims because "claim scope determination is the first step of a patent infringement analysis." *Immunocept*, 504 F.3d at 1285.

¶ 41    This court issued its decision in *Premier Networks* based ultimately on these holdings. *Premier Networks*, 395 Ill. App. 3d at 637. In *Premier Networks*, the plaintiff sued its attorneys for legal malpractice, alleging that the attorneys' failure to present certain evidence in an underlying patent infringement lawsuit resulted in a finding of noninfringement. *Premier Networks*, 395 Ill. App. 3d at 632. Recognizing that the plaintiff would have to prove that it would have succeeded on the merits of the patent infringement suit, we said that the circuit court lacked jurisdiction over the malpractice action because such proof by the plaintiff would require the circuit court to resolve issues that were "inextricably bound to determinations of substantive issues of patent law," which fall under the exclusive jurisdiction of the federal courts. *Premier Networks*, 395 Ill. App. 3d at 637.

¶ 42    The Federal Circuit then revisited *Grable* and *Empire* last year in *Laboratory Corp. of*

*America Holdings v. Metabolite Laboratories, Inc.*, 599 F.3d 1277, 1284 (Fed. Cir. 2010). In that case, the court addressed its jurisdiction over an appeal from a district court's adjudication of a declaratory judgment action where the hypothetical underlying cause of action would have been a state-law breach of contract claim that allegedly required the district court to determine whether a patent at issue had been infringed. *Laboratory Corp. of America Holdings*, 599 F.3d at 1282-83. The court held that its earlier opinion holding that the asserted patent was infringed finally settled the dispute about infringement implicated in the hypothetical breach of contract claim. *Laboratory Corp. of America Holdings*, 599 F.3d at 1283. Therefore, because there was no disputed issue of patent law at stake, regardless of its substantiality, the underlying case did not "arise under" patent law and the court did not have jurisdiction. *Laboratory Corp. of America Holdings*, 599 F.3d at 1284.

¶ 43      In addressing the substantiality of a garden-variety breach of contract claim, absent a disputed patent law issue, the court noted that the "mere presence of a patent as relevant evidence to a claim does not by itself present a substantial issue of patent law." *Laboratory Corp. of America Holdings*, 599 F.3d at 1284. It recognized that federal jurisdiction was appropriate in *Grable*, "where the 'meaning of the federal tax provision … [was] an important issue of federal law that sensibly belongs in federal court,' " but not in the present case involving a breach of contract claim, which is "a fact specific application of state law." *Laboratory Corp. of America Holdings*, 599 F.3d at 1285 (quoting *Empire*, 547 U.S. at 700). It further concluded that a "breach of contract analysis would not require 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers.' " *Laboratory Corp. of America Holdings*, 599 F.3d at 1285 (quoting *Grable*, 545 U.S. at 312). Specifically, "[h]earing a context-driven, state law contract issue in this court provides no 'hope of uniformity' in the patent laws." *Laboratory Corp. of America Holdings*, 599 F.3d at 1285 (noting that state courts " 'can and do' " resolve patent issues (quoting *Speedco Inc. v. Estes*, 853 F.2d 909, 913-14 (Fed. Cir. 1988))).

¶ 44      Applying the above analyses to the facts of this case, we must determine whether Magnetek's one-count complaint for legal malpractice necessarily raises a disputed and substantial issue of federal patent law that requires resolution by a federal court and deprives the circuit court of jurisdiction. Although the parties' arguments focus on whether Magnetek's claim raises a "substantial" federal patent law issue, this case, like *Laboratory Corp. of America Holdings*, turns on whether the federal issue is "disputed."

¶ 45      To succeed in its malpractice case, Magnetek must plead and prove that Kirkland owed it a duty of due care arising from the attorney-client relationship, that Kirkland breached that duty, and that as a proximate result, Magnetek incurred damages. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225-26 (2006). The parties agree that it is the element of proximate cause that raises the specter of federal jurisdiction. To prove that element, Magnetek must demonstrate that but for Kirkland's negligence, it would have succeeded in the underlying lawsuit, which requires that Magnetek litigate a " 'case within a case.' " *Tri-G*, 222 Ill. 2d at 226.

¶ 46      Based on the allegations of Magnetek's well-pleaded complaint, success in the underlying lawsuit means that Magnetek must establish that the '409 patent would have been rendered unenforceable. Magnetek alleged that Kirkland had a duty to conduct "all

-12-

investigation and discovery relating to the patent infringement claims," which "should have included prior art and the prior misconduct of Nilssen in previous litigation and in his dealings with the [USPTO]." Magnetek further alleged that Kirkland "deviated from the applicable standard of care *** by failing to investigate and discover the prior art and misconduct which had not been disclosed by Nilssen."

¶ 47 Consequently, Magnetek alleged:

"had Kirkland discovered the existence of the material prior art and pattern of misconduct of Nilssen prior to the arbitration, Magnetek would have been permitted to assert an effective defense that Nilssen engaged in inequitable conduct and fraud and that the patent was invalid and/or unenforceable."

Magnetek specifically alleged:

"The prior art and prior misconduct that should have been used for [its] benefit, were in fact used in two other cases involving Nilssen in which Nilssen's patents and patent claims were found to be unenforceable and invalid."

During the hearing on Kirkland's motion to dismiss and at oral argument, Magnetek represented that at least one of the same Kirkland attorneys represented Magnetek in the underlying case and Osram in *Osram I*, which Kirkland does not dispute. Magnetek claims that the defenses asserted in *Osram I* should have been asserted on its behalf in the underlying case.

¶ 48 Thus, to satisfy the proximate cause element, Magnetek would have to prove that if Kirkland had asserted the inequitable conduct defenses it presented in *Osram I* in Magnetek's case, the '409 patent would have been rendered unenforceable and unable to sustain the judgment. The *Osram* opinions demonstrate that it would.

¶ 49 In *Osram I*, Kirkland asserted on Osram's behalf that the '409 patent was unenforceable due to Nilssen's inequitable conduct during the patent prosecution process centered on the following three claims: (1) that Nilssen improperly claimed small-entity status and paid fees as a small entity (*Osram I*, 440 F. Supp. 2d at 893-94); (2) that Nilssen claimed a priority filing date for the '409 patent application that he was not entitled to, which allowed him to avoid disclosing prior art references and obtain patent claims that he was not entitled to (*Osram I*, 440 F. Supp. 2d at 894-95); and (3) that Nilssen failed to disclose relevant litigation that was ongoing during the pendency of the '409 patent prosecution (*Osram I*, 440 F. Supp. 2d at 896).

¶ 50 " 'A patent may be rendered unenforceable due to inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the [US]PTO during prosecution.' " *Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1373 (Fed. Cir. 2010) (quoting *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006)). The party seeking to render a patent unenforceable due to inequitable conduct must prove both materiality and intent by clear and convincing evidence. *Golden Hour*, 614 F.3d at 1373. The court must then weigh the levels of materiality and intent to determine whether the conduct at issue amounts to inequitable conduct. *Golden Hour*, 614 F.3d at 1373.

¶ 51 In *Osram I*, the district court conducted an extensive trial to evaluate those inequitable

-13-

conduct claims, among others. *Osram I*, 440 F. Supp. 2d at 889. It evaluated more than 400 exhibits and the live testimony of seven witnesses, including four expert witnesses and Nilssen himself. *Osram I*, 440 F. Supp. 2d at 889. After a thorough evaluation of each of the six claims of misconduct committed by Nilssen in relationship to each of the 11 patents at issue, the district court concluded that Kirkland had, on Osram's behalf, established by clear and convincing evidence that all of the patents at issue were unenforceable, including the '409 patent. *Osram I*, 440 F. Supp. 2d at 911.

¶52    Specifically, with respect to the first claim against the '409 patent, the district court found that Nilssen entered into a patent license agreement with a large corporation that obligated Nilssen to license the '409 patent, among others, which precluded Nilssen from claiming small-entity status for purposes of paying reduced maintenance fees. *Osram I*, 440 F. Supp. 2d at 893-94. Nevertheless, Nilssen repeatedly claimed and paid fees as a small entity. *Osram I*, 440 F. Supp. 2d at 896. The district court determined that a "false declaration of small entity status is material as a matter of law." *Osram I*, 440 F. Supp. 2d at 903. Additionally, the court found that Nilssen acted with intent to mislead the USPTO by claiming small-entity status. *Osram I*, 440 F. Supp. 2d at 904. The court found Nilssen's testimony that he did not know of the requirements for small entities, or that he made a good faith mistake in claiming small-entity status, incredible. *Osram I*, 440 F. Supp. 2d at 904. The court concluded that, on balance, the materiality of the misrepresentation and Nilssen's "obvious intent to mislead" made his misconduct so culpable as to render the '409 patent, among others, unenforceable. *Osram I*, 440 F. Supp. 2d at 905.

¶53    Regarding the second claim of misconduct involving the '409 patent, the district court found that Nilssen improperly claimed an earlier filing date on the patent application than he was entitled to. *Osram I*, 440 F. Supp. 2d at 894. As a result, Nilssen was able to avoid disclosing prior art references and obtain patent claims to which he would not otherwise be entitled. *Osram I*, 440 F. Supp. 2d at 908. The court determined that this misconduct was "highly material" because it affects the patent examiner's determination of whether a patent should issue. *Osram I*, 440 F. Supp. 2d at 908. In addition, the court found that Nilssen "intentionally misclaimed" the filing dates, as demonstrated by a letter Nilssen wrote to one of his licensees in which he disclosed that he knew certain prior art references would preclude his ability to obtain " 'effective basic patent protection.' " *Osram I*, 440 F. Supp. 2d at 908. The court concluded that Osram proved Nilssen's intentional misrepresentations by clear and convincing evidence and rendered the '409 patent, among others, unenforceable. *Osram I*, 440 F. Supp. 2d at 909.

¶54    Finally, the court found that Nilssen failed to disclose to the USPTO that while the '409 patent application was pending, he was engaged in an ongoing patent infringement lawsuit against another defendant involving patents of the same subject matter as the '409 patent. *Osram I*, 440 F. Supp. 2d at 895-96. The court concluded that Nilssen's failure to disclose the litigation was "highly material" to the prosecution of the '409 patent and his claim that he was unaware of his duty to disclose it was not credible. *Osram I*, 440 F. Supp. 2d at 909-10. Consequently, it found that Nilssen's misconduct in this respect was also sufficiently culpable as to render the '409 patent and others unenforceable. *Osram I*, 440 F. Supp. 2d at 910. Subsequently, the Federal Circuit affirmed the decision in all respects. *Osram II*, 504

F.3d at 1235-36.

¶ 55    The doctrine of collateral estoppel dictates that the final determination of the unenforceability of the '409 patent applies in the underlying lawsuit. The Supreme Court and the Federal Circuit have long recognized that when a patent has been held to be unenforceable in a suit involving one alleged infringer, an unrelated party may rely on that unenforceability decision under the principles of collateral estoppel. *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1413 (Fed. Cir. 1994) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971)); *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) (holding that an unrelated third party "may reap the benefit" of a prior determination of patent invalidity); *Laboratory Corp. of America Holdings*, 599 F.3d at 1284 (applying a prior ruling on patent infringement to an underlying breach of contract claim based on collateral estoppel principles). See also Nilssen v. Universal Lighting Technologies, No. 04–CV–0080 (M.D. Tenn. Apr. 18, 2008) (recognizing that after *Osram I*, collateral estoppel applied to preclude Nilssen from proceeding on an infringement suit against a third party where the '409 patent was asserted). Thus, because Magnetek would have to prove that the *Osram* defenses would have resulted in a finding of unenforceability for the '409 patent in its case, it may "reap the benefit" of the *Osram* courts' final determinations of the unenforceability of that patent.

¶ 56    Consequently, as the Federal Circuit discussed in *Laboratory Corp. of America Holdings*, the issue of the unenforceability of the '409 patent, based on the defenses asserted by Osram and now claimed by Magnetek, "has been resolved and is no longer disputed." *Laboratory Corp. of America Holdings*, 599 F.3d at 1284. While a finding of legal malpractice would depend on the unenforceability of the '409 patent, the circuit court would not have to conduct an independent analysis of unenforceability because the district court established, and the Federal Circuit affirmed, the merits of that claim and neither party contests those decisions. See *Laboratory Corp. of America Holdings*, 599 F.3d at 1284. Therefore, there is no "disputed" federal patent issue raised by Magnetek's legal malpractice complaint that would give rise to federal jurisdiction.

¶ 57    For these reasons, this case is distinguishable from *Air Measurement*, *Immunocept*, and *Premier Networks*, on which both parties rely to support their respective arguments. In each of those cases, the plaintiffs in the legal malpractice case were also the plaintiffs in the underlying lawsuits. In each of those underlying suits, whether for patent infringement or negligent claims drafting, the plaintiffs lost on the merits of their claims. To prove that they would have been successful in the underlying lawsuits, the plaintiffs would have to prove that their patents were infringed to satisfy the proximate cause element, which their former attorneys did not concede in the malpractice cases. Additionally, in *Immunocept*, the plaintiff would have to prove that its patent would have been issued with a broader claim scope before proving infringement. Thus, unlike the present case, those plaintiffs were asking a state court to retry the infringement case and evaluate the effect of the evidence they claim would have changed the outcomes, without the benefit of a separate and final determination on the merits of those claims. In this case, the substantive evaluation of the unenforceability defenses already occurred in the *Osram* cases, which resolves that question in the underlying lawsuit.

¶ 58    Kirkland contends that the *Osram* cases are not applicable here because those cases

involve 10 other patents not at issue in Magnetek's case and, thus, do not rule on the unenforceability of the '409 patent in isolation. Kirkland relies on *dicta* in *Osram II* in support of that contention. There, the Federal Circuit stated in conclusion that "[e]ach of the issues on which the district court found inequitable conduct generated defenses by Nilssen that were not per se unreasonable when considered in isolation. *** However, this case presents a collection of such problems ***." *Osram II*, 504 F.3d at 1235. Moreover, Kirkland contends that *Osram I* did not "address or decide the substantial patent issues presented" in the underlying lawsuit. We disagree.

¶ 59    First, by the very nature of the allegations in Magnetek's complaint, the district court necessarily addressed and decided the "substantial patent issues presented" in the underlying lawsuit: Magnetek claimed that Kirkland should have presented the same defenses and supporting evidence on its behalf that it presented on Osram's behalf. On the merits, the district court's opinion thoroughly addressed each of the bases on which each patent–specifically, the '409 patent–was alleged to be unenforceable. It conducted a detailed analysis of the alleged misconduct asserted against each patent and described the particular evidence that it found to be persuasive in holding each patent unenforceable. For each of the six alleged bases of inequitable conduct in *Osram I*, the court identified which of the 11 patents was associated with that misconduct and were thereby deemed unenforceable. Therefore, *Osram I* justifies a finding that each individual patent, including the '409 patent, is unenforceable on any of several bases of inequitable conduct identified by the district court.

¶ 60    Moreover, our conclusion is consistent with the Federal Circuit's comments relied upon by Kirkland. The court noted that each of the bases of inequitable conduct raised by Osram generated defenses by Nilssen that were not *per se* unreasonable, but that the "collection of such problems" led to the conclusion that Nilssen acted inequitably. What Kirkland fails to appreciate is that the court was specifically referring to the fact that while the small-entity status claim, the improper priority date claim, and the undisclosed litigation claim, individually, might not rise to the level inequitable conduct, the combination of that misconduct did. *Osram II*, 504 F.3d at 1235. The district court found the '409 patent unenforceable on each of those three bases, and thus, consistent with the Federal Circuit's comments, the fact that the '409 patent was deemed unenforceable on all three of those bases evidences the "collection of such problems" that ultimately warranted a finding of unenforceability. Therefore, the *Osram* cases are applicable here.

¶ 61    Additionally, we find it of no consequence that *Osram I* was issued after the Magnetek arbitration, as Kirkland claims. The law and the standards for inequitable conduct were the same at the time of the Magnetek arbitration and *Osram I*, which proceeded contemporaneously. Nilssen's alleged misconduct would have been evaluated by the same standards in both cases.

¶ 62    Finally, we must address Kirkland's contention at oral argument that we should adhere to the analytical framework set forth in *Christianson*, which addressed patent jurisdiction under section 1338, and not *Grable*, which addressed general federal-question jurisdiction under section 1331, because "patents are different." This argument ignores *Christianson*'s clear directive that section 1331 jurisprudence applies equally to section 1338 jurisdictional

analyses because the statutes contain "identical language" and demand "[l]inguistic consistency." *Christianson*, 486 U.S. at 808. In undertaking its section 1338 analysis, *Christianson* applied the analysis derived from *Franchise Tax Board*, *supra*, which involved section 1331 jurisdiction. The Supreme Court has since refined that analysis. *Grable*, 545 U.S. at 314. We can conceive of no reason why the newly articulated section 1331 analysis set forth in *Grable* would not apply to a section 1338 analysis in this case as it did in *Christianson*. Kirkland's argument is unpersuasive.

¶ 63        Having determined that there is no disputed federal patent issue implicated by the underlying lawsuit, we also conclude that there is no substantial issue of federal patent law remaining to confer federal jurisdiction. Because the *Osram* cases answer the question of whether Magnetek would have been successful on the merits of its underlying claim, all that remains of patent law is "the mere presence of a patent as relevant evidence to a [state-law legal malpractice] claim[, which] does not by itself present a substantial issue of patent law." *Laboratory Corp. of America Holdings*, 599 F.3d at 1284. A legal malpractice claim, too, is a "fact specific application of state law," which the Federal Circuit deems insufficiently substantial to confer jurisdiction. See *Laboratory Corp. of America Holdings*, 599 F.3d at 1284. Like the Federal Circuit, we conclude that there is nothing inherent in a state-law claim that "require[s] 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers,' " and for that reason, there is no substantial issue of federal patent law involved to confer federal jurisdiction. *Laboratory Corp. of America Holdings*, 599 F.3d at 1285 (quoting *Grable*, 545 U.S. at 312). With respect to the remaining elements of Magnetek's claim, legal malpractice cases proceed no differently than any other malpractice case. Magnetek still must establish through expert testimony that Kirkland breached the applicable standard of care and prove that it suffered damages as a result of the breach.

¶ 64        For all of the foregoing reasons, we conclude that the circuit court has subject matter jurisdiction over Magnetek's legal malpractice claim. We therefore reverse the judgment of the circuit court and remand this matter to the circuit court for further proceedings.

¶ 65        Reversed and remanded.